(887 P.2d 1152)

No. 71,720

Errol Joe Kampschroeder, *Appellee*, v. Norma W. Kampschroeder and Sherryl Holmes, *Appellants*.

Opinion filed January 6, 1995.

*Gerald L. Cooley, John M. Cooley,* and *Randall F. Larkin,* of Allen, Cooley & Allen, of Lawrence, for appellant Norma W. Kampschroeder.

*Stephen M. Fletcher,* of Overland Park, for appellant Sherryl Holmes.

*Byron E. Springer,* of Barber, Emerson, Springer, Zinn & Murray, L.C., of Lawrence, for appellee.

Before Gernon, P.J., Elliott and Lewis, JJ.

Lewis, J.: Errol Joe Kampschroeder was born to the marriage of Robert and Waneta Kampschroeder. Waneta died in April

1980, and Robert married Norma in October 1980. The marriage was not accepted well by Errol Joe and appears to have affected the relationship between the parties from that point on.

Robert and Norma remained married until Robert's death in 1990. Upon Robert's death, most of his and Norma's assets were held in joint tenancy with the right of survivorship. Norma placed these assets in her own name and the name of Sherryl Holmes, her daughter. Errol Joe commenced the present action to impose a constructive trust on the jointly held assets. The trial court held in favor of Errol Joe, and Norma and Sherryl appeal.

We affirm the decision of the trial court.

Litigation of this nature is particularly fact driven. The facts in this case are not, unfortunately, unusual. This lawsuit is between a stepson and his stepmother over property owned by the son's father and stepmother's husband at the time of his death. There was an extensive trial, and the trial court made 32 detailed findings of fact. We have reviewed the record and conclude that all of the trial court's findings of fact are supported by substantial competent evidence.

After hearing all the evidence, the trial court held that Norma and Robert agreed, for the convenience of the parties, to hold most of their assets in joint tenancy. This was to allow the properties accumulated by both parties or brought into the marriage by both parties to become the property of their heirs after their death. They intended that "the properties of Robert go to Errol and the properties of Norma go to Sherryl." Although we concede that a different spin might have been put on the evidence, the analysis adopted by the trial court is substantially supported by the record.

The trial court found five significant factors in reaching its conclusions:

"a. The Antenuptial Agreement showed their original intentions to keep their property separate.

"b. Robert's attitude toward Sherryl's son was emphatic that he not receive any of Robert's property and was certainly corroborative of their intent that the properties of Robert go to Errol, and the properties of Norma go to Sherryl.

"c. Clearly, the taped conversation of Norma and Nancy corroborates the testimony and position of the Plaintiff. Norma's testimony that she wanted to

be fair did not refer to her deciding whether commingled property should be separated because that had already been decided by the parties. That was clear by their intent as indicated on the taped conversation. When Norma indicated she wanted to be fair it is clear from the testimony she was overwhelmed by the process of having to separate the property out, of deciding just what was hers and what was Robert's, and thus would be Errol's.

"d. Robert's comment: 'Make certain that Norma will be cared for' is not the language or the statement of a man who was leaving his entire estate of some worth to his wife. The fact that he wanted to make certain Norma was cared for indicated to me on his part a confusion as to what the wills would be.

"e. Norma's comment: 'This will is no good,' certainly again corroborates the testimony or the position that this was—indeed, the intentions of the parties was to make certain that what was Robert's went to Errol, and what was Norma's went to Sherryl."

Once again, the analysis of the trial court is well within the evidence shown. The five factors cited by the trial court are clearly supported by substantial competent evidence. In the final analysis, the trial court concluded that the parties had entered into an understanding where each was to have the use of the income from the property of the other until their death, at which time the property would go to their respective children. This understanding formed the basis for the consideration of the agreement.

The trial court went on to conclude:

"Plaintiff has by clear and convincing standards shown that there was an agreement entered into, and, in fact, always understood by Norma and Robert, that upon the death of the first to die, the income from the property brought into the marriage by that person would be enjoyed by the surviving spouse, and then pass on to the children of Norma or Robert, depending upon the situation."

This conclusion is consistent with the trial court's findings of fact. Norma had breached this understanding, which gave rise to the constructive trust imposed.

The trial court went on to determine which assets were subjected to the constructive trust. The total value of those assets is $323,233.11. The constructive trust is such that Norma is to receive the income from these assets until her death, at which time they are to be paid to Errol Joe.

In appellants' brief is the following statement: "While defendants admit that the trial court's findings of fact are supported by substantial competent evidence in the record, defendants deny

that those findings of fact support the trial court's conclusions of law or its judgment." During oral argument before this court, counsel for Norma conceded that the trial court's findings of fact were supported by substantial competent evidence. On the other hand, counsel for Sherryl was unwilling to make such a concession. The problem with Sherryl's position is that her attorney did not file a separate brief. He joined in a single brief filed by the attorney for Norma. Sherryl is not in a position to contradict admissions made in the brief filed.

However, we have examined the record, and we conclude that the findings of fact are supported by substantial competent evidence.

An oral trust must be proved by clear and convincing evidence. *Wehking v. Wehking*, 213 Kan. 551, 554, 516 P.2d 1018 (1973). Upon review, we operate under the assumption that the trial court applied the correct standard of proof and was satisfied with the quantum of evidence introduced.

A constructive trust arises " 'wherever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title.' " *Hile v. DeVries*, 17 Kan. App. 2d 373, 374, 836 P.2d 1219 (1992) (quoting *Clester v. Clester*, 90 Kan. 638, 642, 135 Pac. 996 [1914]).

An essential element of proving a constructive trust is a showing of fraud. However, there are two types of fraud, actual and constructive.

"Actual fraud is an intentional fraud, and the intent to deceive is an essential element of the action. Constructive fraud, however, is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty of purpose or intent to deceive is necessary. [Citation omitted.]" *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987).

In the context in which this issue is presented, we are not dealing with actual dishonesty of purpose or intent to deceive. The evidence indicates Norma was guilty of a breach of duty amounting to constructive fraud.

Absent actual fraud, there are two additional elements which are required to be proven. First, there must be a confidential

relationship. Secondly, the confidence reposed must be betrayed, or a duty imposed by the relationship must be breached. See *Winsor v. Powell*, 209 Kan. 292, 302-03, 497 P.2d 292 (1972).

A confidential relationship is not presumed, and the burden of proving such a relationship existed rests upon the party asserting its existence. *Paul v. Smith*, 191 Kan. 163, Syl. ¶ 4, 380 P.2d 421 (1963). The mere fact that a transfer of property occurs between a husband and wife and no valuable consideration passes is not sufficient to raise a trust by implication. *Clester v. Clester*, 90 Kan. 638, 641, 135 Pac. 996 (1914).

Under the facts shown, Errol Joe seeks to impress a trust on property which Norma owns by virtue of a joint tenancy contract with Robert. There is no question but that the property held in joint tenancy may be the subject of a trust. *Wehking v. Wehking*, 213 Kan. 551, Syl. ¶ 2; *Winsor v. Powell*, 209 Kan. at 300.

The facts of this case are strikingly similar to those in *Winsor v. Powell*. In that action, the decedent, when discussing his affairs, spoke of his daughter, Sarah, and said, " 'She'll do the right thing.' " 209 Kan. at 301. In this action, Robert told Errol Joe that he had $350,000, that Norma would be fair, and that Errol Joe could trust her. Robert told Errol Joe that Norma was to get the interest and, upon her death, Errol Joe was to get the principal. In addition, Norma acknowledged to Errol Joe's wife the necessity of her separating Robert's assets from her own. These facts in *Winsor v. Powell* were held sufficient to raise a constructive trust, and they are equally sufficient in this action.

Norma and Sherryl argue that the agreement found by the court was not proven by clear and convincing evidence.

"To be clear and satisfactory, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous, and 'satisfactory' in the sense that it is so believable that persons of ordinary intelligence, discretion, and caution may have confidence in it. Clear and satisfactory evidence is not a quantum of proof, but a quality of proof." *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, Syl. ¶ 7, 827 P.2d 24 (1992).

Norma and Sherryl suggest that there was no direct evidence of an agreement between Robert and Norma. However, we note that in the recorded conversation between Norma and Errol Joe's

wife, Norma acknowledges the existence of some understanding between her and Robert and indicates that in order to carry out that understanding, she must separate Robert's assets from her own. We consider this to be direct evidence of the existence of an agreement. Indeed, circumstantial evidence may be used to prove the existence of an agreement. *Staab v. Staab*, 160 Kan. 417, 419, 163 P.2d 418 (1945).

Earlier in this opinion, we enumerated the five significant factors relied on by the court in reaching its conclusion. Norma and Sherryl argue that these factors do not show by clear and convincing standards that an agreement existed.

We do not review for the *quantum* of evidence, but rather the quality. "On review, this court considers only the evidence of the successful party to determine whether it is substantial and whether it is of a clear and convincing quality. See *Newell v. Krause*, 239 Kan. 550, 557, 722 P.2d 530 (1986)." *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. at 448.

As we review the evidence in light of our standard of review, we conclude that each of the five factors relied upon by the trial court is supported by evidence of a clear and convincing quality. In the final analysis, this was a factual situation. The facts were resolved in favor of Errol Joe, and we will not engage in fact-finding or substitute our judgment on that issue.

The element of a confidential relationship is shown by the evidence. Under the trial court's construction of the facts, Robert and Norma entered into an agreement in which each relied on the survivor to see that the assets were properly distributed. Robert placed trust and confidence in Norma to see that Errol Joe received the proper distribution of assets, and it would be inequitable to permit her to disregard the terms of that agreement.

Finally, it is suggested that even if there was an agreement and a confidential relationship, Norma did not breach either. The argument is that under the terms of the agreement, Norma was to enjoy the income for her lifetime, and only upon her death was the principal to pass to Errol Joe. It then follows that there cannot be a breach of fiduciary duty or a betrayal of confidence unless and until Norma dies without the necessary provisions in her will.

While this argument may have some logical basis, it ignores the realities of the situation. After Robert's death, some of the assets were placed in joint tenancy with Norma's daughter, Sherryl. This was obviously done with the intent that upon Norma's death, these assets would pass to Sherryl. In addition, Norma now denies that any agreement existed and testified, "I never made any commitment to Bob." These facts point to a breach of the agreement by Norma.

In summary, the findings of the trial court were supported by substantial competent evidence and the conclusions of law are consistent with and supported by the findings of fact.

### EXHIBITS 6 AND 14 THROUGH 20

Norma and Sherryl next argue that the trial court erred in admitting into evidence plaintiff's exhibit 6 and plaintiff's exhibits 14 through 20. This argument is principally based upon the premise that an inadequate foundation was shown.

The trial court is possessed of discretion when ruling on admissibility of evidence. An attack on an evidentiary ruling requires that the party attacking that ruling show that the trial court abused its discretion. An abuse of discretion exists only when no reasonable person would take the view adopted by the trial court. *St. Francis Regional Med. Center, Inc. v. Weiss*, 254 Kan. 728, 748, 869 P.2d 606 (1994).

K.S.A. 60-407(f) provides that all relevant evidence is admissible unless otherwise provided by statute. Relevant evidence is evidence having "any tendency in reason to prove any material fact." K.S.A. 60-401(b). "It is axiomatic that a foundation must be laid establishing the competency, materiality and relevancy of all evidence prior to admission." *Cansler v. Harrington*, 231 Kan. 66, 69, 643 P.2d 110 (1982).

We conclude that the trial court did not err in admitting the exhibits in question. Exhibit 6 was a photocopy of the schedule "E" of Robert's estate tax return. This exhibit listed all of Robert's jointly held property. In addition to schedule "E," the exhibit contains a listing of separate assets held by Norma at Robert's death. The separate property was identified by Norma on direct

examination. We conclude this exhibit was clearly relevant and material and that a proper foundation was laid.

Exhibits 14 through 20 consisted of financial records which traced the assets from the time Robert and Norma were married until Robert's death. These exhibits were clearly relevant. One of the principal issues in this action was to identify which assets originated as Robert's separate property and which assets were accumulated during the marriage. Exhibits 14 through 20 were relevant on that issue.

Norma and Sherryl also argue about the authenticity of the records. They suggest that these exhibits were admitted without proper foundation, identification, or indicia of trustworthiness. The principal problem with this particular argument is that the parties stipulated as to the authenticity of the records prior to trial.

We see no need to describe with particularity the evidence purported to be shown by each exhibit. It seems to us that one of the principal issues in the admission of evidence of this sort is its authenticity. The parties stipulated as to the authenticity of those records, and we find no error on the part of the trial court in admitting exhibits 6 and 14 through 20.

## JUDGMENT AGAINST SHERRYL HOLMES

Sherryl takes issue with the trial court's finding of fact No. 32. This finding identifies assets which were brought info the marriage by Robert and later transferred by Norma into joint tenancy between herself and Sherryl. Sherryl argues that this finding of fact is not supported by substantial competent evidence. We disagree and have previously indicated our decision that all of the trial court's findings of fact were supported by substantial competent evidence. Our earlier comments are also relevant concerning the position of Sherryl in arguing that the findings of fact were not supported by substantial competent evidence.

Sherryl also argues that no findings of fact remain which would support the judgment entered against her.

The trial court does not suggest that Sherryl was culpable in procuring the transfers to her mother and herself as joint tenants.

Culpability is not the issue. The stark fact is that Sherryl is a joint tenant on a substantial amount of assets on which the trial court has imposed a constructive trust. "If the trustee in breach of trust transfers trust property and no value is given for the transfer, the transferee does not hold the property free of the trust, although he had no notice of the trust." *Kline v. Orebaugh*, 214 Kan. 207, Syl. ¶ 6, 519 P.2d 691 (1974).

The fact that Sherryl did not procure the transfer of the property does not entitle her to hold it free of trust nor warrant a conclusion that the judgment against her is invalid. Norma testified that she wanted Sherryl to have access to the joint tenancy accounts in case they were needed to take care of Norma. In addition, Norma testified that she intended Sherryl to get the accounts upon her death.

We hold that the trial court did not err in entering judgment against Sherryl. The findings of fact made by the trial court support that judgment.

Affirmed.