(927 P.2d 495)
No. 74,472

RALPH D. HECK, *Appellant*, v. DEBORAH J. ARCHER, *et al.*,
*Appellees.*

58

Opinion filed November 15, 1996.

*Gary M. Cupples* and *Arlen L. Tanner*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant.

*C. Edward Peterson*, of Finnegan, Conrad & Peterson, of Kansas City, Missouri, for appellees.

Before ELLIOTT, P.J., KNUDSON, J., and RICHARD M. SMITH, District Judge, assigned.

SMITH, J.: Appellant Ralph D. Heck appeals an order of the district court granting summary judgment in favor of the defendant, Deborah J. Archer. We affirm in part, reverse in part, and remand for trial on the remaining issues.

This interlocutory appeal involves payable-on-death (POD) accounts owned by Ralph H. Heck, now deceased. Heck had four children, Ralph D. Heck, Christopher Heck, Brad Heck, and Deborah J. Archer. Ralph brought an action in equity seeking a division of these POD accounts among all of the children. Deborah was named as beneficiary by Heck on all of the accounts and resists Ralph's claim for relief.

Ralph brought an action in the district court seeking to impose a constructive trust for the benefit of all the children on his father's POD accounts. Ralph based his prayer for equitable relief upon three theories: undue influence; fraud, actual or constructive; and equitable estoppel. The district court found no genuine issues of material fact and granted summary judgment in favor of Deborah as a matter of law. The court concluded there was insufficient evidence Heck intended his sons to have any portion of the POD accounts. The court found there was no evidence that Heck had been of unsound mind at the time he established the accounts and no evidence that Deborah exerted any undue influence over Heck. Finally, the court held there was insufficient evidence to establish

any collateral agreement between Deborah and her father that she would distribute the POD accounts among the children upon her father's death. The district court found that even if Heck had told his sons that Deborah would divide the accounts among all of the children, those statements were not sufficient to create a constructive trust.

Ralph's petition named Deborah and the financial institutions where the POD accounts were deposited as defendants. Deborah counterclaimed against Ralph and filed a third-party action against Chris. After the financial institutions interpled and deposited their remaining funds with the district court, they were dismissed from the action. Since the counterclaim is still pending, Ralph's appeal is pursuant to K.S.A. 60-254(b) and is timely.

Ralph's sole issue on appeal is whether the district court erred in granting summary judgment in favor of Deborah. This issue must be addressed separately as to each claim for relief.

The applicable standard of review is well known:

"Summary judgmen proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. K.S.A. 60-256(c). If reasonable minds could differ as to the conclusions drawn from the facts, summary judgment must be denied. [Citations omitted.] When a summary judgment is challenged on appeal, this court must read the record in the light most favorable to the party defending against the motion. [Citation omitted.] Once the moving party has properly supported the motion for summary judgment, the nonmoving party must come forward with specific facts showing a genuine issue for trial. [Citation omitted.]" *Moorhouse v. City of Wichita*, 259 Kan. 570, 575-76, 913 P.2d 172 (1996).

A review of the record in the light most favorable to Ralph would establish the following facts:

Heck lived near Ralph in St. Louis, Missouri, until late 1988. He then moved to Olathe, Kansas, near Deborah. Heck lived with Deborah for nearly 2 years. He then lived on his own outside of Deborah's residence until his final hospitalization in early 1993.

Heck opened several bank accounts in Kansas and Missouri with funds exceeding $300,000. He was the sole owner of the accounts

but they were to be "payable on death" to Deborah. There were no other significant assets in Heck's estate.

It appears one account may have been opened in August 1991. This was nearly a year after Heck moved out of Deborah's home. There is no evidence as to when the other accounts were established.

Heck died intestate in Olathe, Kansas, on February 12, 1993. Ralph, Christopher, Brad, and Deborah were his sole surviving heirs. Prior to his death, Heck had been hospitalized with a serious illness and Deborah had been appointed his guardian. Shortly after the guardianship was established, Heck died. Ralph challenged Deborah's actions as guardian, which were the subject of a prior appeal to this court. See *In re Guardianship and Conservatorship of Heck*, 22 Kan. App. 2d 135, 913 P.2d 213 (1996).

In the months following his death, Deborah treated the funds in the POD accounts as her own.

Ralph maintains it was error to grant summary judgment because there is a genuine issue of material fact as to whether Deborah was named as the only beneficiary on the POD accounts as a result of undue influence or an agreement she made with Heck that she would, upon his death, divide the funds among all four siblings. Ralph suggests deposition testimony creates this genuine material issue.

In his deposition, Chris testified Heck told him approximately one and one-half months before his death, "I want to do what's right, and your sister will make sure everything is divided even amongst kids . . . Debbie is going to take care of everything."

Following Chris' visit with his father, Chris asked his sister Deborah about the statement made by their father that "[h]e is dying and that his estate is going to be divided amongst the children." In response, Chris testified that Deborah acknowledged, "Yes, that's what he wants."

Chris further testified that on a separate occasion, Deborah told him she knew Heck wanted the estate divided "amongst the kids" and that is what she would do if something happened to him.

Brad testified in his deposition that just prior to Heck's death, Deborah told him that their father arranged with her to have all

of his property and the monies in his various accounts, divided equally among the four children, but that Deborah was to subtract monies Heck had loaned Ralph and Chris.

Brad also testified that in the late evening following Heck's funeral, Deborah spoke by telephone with Brad and Chris. During the conversation, Deborah said that she would give Chris his share when she felt he was ready to handle it, but she did not feel he was ready yet. Brad also stated that Deborah told Chris that she would split the property with Chris, but that the other brothers, Ralph and Brad, should not get anything.

Other portions of the discovery record establish that Deborah knew where Heck's various bank accounts were, drove him to the bank at times, and had a key to Heck's safety deposit box for 2 years prior to his death.

"A POD account is a contract whereby funds are deposited in a financial institution for the benefit of another and payable upon the death of the depositor to the named beneficiary. The depositor retains direct control over the account." *McCarty v. State Bank of Fredonia*, 14 Kan. App. 2d 552, 557, 795 P.2d 940 (1990). POD accounts are very similar to *Totten* trusts in that they have the same effect. They are distinguishable only on the basis that POD accounts are based on contract rather than trust principles. *In re Estate of Morton*, 241 Kan. 698, Syl. ¶ 8, 769 P.2d 616 (1987).

### *Undue influence*

The first issue for this court to consider is whether the district court's order granting the defendant summary judgment on plaintiff's claim of undue influence was proper.

POD accounts are statutorily authorized by K.S.A. 9-1215, K.S.A. 17-2263, and K.S.A. 17-5828. These statutes provide for POD accounts at banks, credit unions, and savings and loan institutions, respectively. All three statutes contain the following provision: "Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated."

Plaintiff argues that despite this statutory language, a POD account is a will substitute and as such, the equitable common-law

principles applicable to will contests apply. In support of this position, he relies on *In re Estate of Waitkevich*, 25 Ill. App. 3d 513, 323 N.E.2d 545 (1975).

The guiding principles applicable to a claim of undue influence contesting contracts, inter vivos gifts, and wills are nearly identical. All share certain rules applicable to this action whether the POD accounts are considered "will substitutes," contracts, or a gift.

To establish undue influence sufficient to avoid a testamentary act, the party challenging the act must show "such coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercise his own." *In re Estate of Brodbeck*, 22 Kan. App. 2d 229, 242, 915 P.2d 145 (1996) (quoting *In re Estate of Hall*, 165 Kan. 465, 470, 195 P.2d 612 [1948]). For undue influence to vitiate a contract or inter vivos transfer, it must be proved that at or about the execution of the contract or transfer, there was an influence bearing upon the will of the contracting party or grantor so potent as to destroy his or her free agency and to substitute the will of another. *Hotchkiss, Administrator v. Werth*, 207 Kan. 132, 141, 483 P.2d 1053 (1971); *Cersovsky v. Cersovsky*, 201 Kan. 463, 467, 441 P.2d 829 (1968).

Undue influence, in order to overcome a testamentary act, "must directly affect the testamentary act itself." *In re Estate of Bennett*, 19 Kan. App. 2d 154, 163, 865 P.2d 1062 (1993), *rev. denied* 254 Kan. 1007 (1994). Similarly, it must directly affect the execution of a contract. 201 Kan. at 467.

Undue influence is a species of fraud. Fraud is never presumed but must be shown by clear, satisfactory, and convincing evidence. *In re Estate of Bennett*, 19 Kan. App. 2d 154, Syl. ¶ 2. See also *In re Adoption of Irons*, 235 Kan. 540, 684 P.2d 332 (1984) (action to set aside consent to adoption); *Curtis v. Freden*, 224 Kan. 646, 652, 585 P.2d 993 (1978) (action to set aside deed); *Nelson, Administrator v. Dague*, 194 Kan. 195, 196, 398 P.2d 268 (1965) (action to set aside inter vivos transfer).

The existence of a confidential or fiduciary relationship would have the same effect irrespective of whether the POD accounts are considered "will substitutes" or contracts.

"A presumption of undue influence is not raised and the burden of proof shifted by the mere fact that the beneficiary of a will occupied a confidential or fiduciary relationship with the testator or testatrix. Such a presumption is raised and the burden of proof shifted, however, when, in addition to the confidential relationship, there exists suspicious circumstances." *Bennett*, 19 Kan. App. 2d 154, Syl. ¶ 4.

See *In re Adoption of Irons*, 235 Kan. 540, Syl. ¶ 4; *In re Estate of Brown*, 230 Kan. 726, 732, 640 P.2d 1250 (1982).

A confidential or fiduciary relationship refers to " *'any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party.'* " *Bennett*, 19 Kan. App. 2d at 167.

There is no judicial laundry list or exact definition of what constitutes suspicious circumstances. A determination of suspicious circumstances must be made on a case-by-case basis. 19 Kan. App. 2d 154, Syl. ¶ 5.

Ralph argues there is a genuine issue of material fact as to whether a confidential relationship existed between Deborah and their father. If a confidential relationship did exist in conjunction with suspicious circumstances, the burden to prove a lack of undue influence would have shifted to Deborah, making summary judgment against Ralph improper. The district court did not make a specific determination of whether such a relationship existed. Instead, it appears the court simply found no suspicious circumstances suggesting Deborah exercised any undue influence at the time the accounts were established.

The record establishes that Deborah knew where Heck's various bank accounts were, that she drove her father to the bank at times to transact business, and that she had a key to his safety deposit box 2 years prior to his death. There was no evidence that she convinced her father to establish the POD accounts or to name her as sole beneficiary. Other than driving him to the bank, there was no evidence that Deborah even accompanied her father into the bank. There was no evidence Deborah accessed her father's safety deposit box any time prior to his death. The record is void of any evidence that Deborah suggested that Heck establish the

accounts in the manner that he did. In fact, the record is completely silent as to the date all but one of the accounts was established. This account was established nearly a year after Heck moved out of Deborah's home. The mere relationship of parent and child does not raise a presumption of a confidential relationship. *Curtis v. Freden*, 224 Kan. at 651.

In *Brodbeck*, this court noted that a party's ability and opportunity to exercise undue influence over a testator, by itself, is not sufficient to overcome a properly supported motion for summary judgment. The court held that " '[p]ower, opportunity, and purpose to exercise undue influence, or possibility, conjecture, surmise and suspicion that undue influence had induced a will, alone cannot authorize the inference that such influence has in fact been exercised. . . .' [Citation omitted.]" 22 Kan. App. 2d at 241.

Even reading the record in the light most favorable to Ralph, the facts do not establish a confidential relationship or suspicious circumstances. There is no evidence Deborah substituted her will for that of Heck's or that anything that Deborah did directly affected the creation of the POD accounts when they were established.

The district court's order, to the extent it granted summary judgment on Ralph's undue influence claim, is affirmed.

### Constructive trust

Ralph's second claim for equitable relief is based on the theory of constructive trust. He asserts that Deborah, either by actual or constructive fraud, led her father to establish and/or maintain her as the beneficiary on the POD accounts with the representation that she would divide the funds among the siblings. Ralph maintains that this fraud results in a constructive trust for the benefit of all four heirs, which Deborah is equitably estopped from denying.

The district court placed considerable significance on the fact there was no writing evidencing Heck's intent to divide the POD accounts among the siblings, or any direct evidence of the existence of such an agreement between him and Deborah. In its discussion of the law as applied to the facts, the trial court stated:

"The statute of frauds can only be set aside in transactions where its enforcement will permit the perpetration of that which it was intended to prevent. There is no serious disagreement among the authorities upon this subject. Any confusion between the authorities arises not so much upon the legal rule as to when a trust arises, but rather upon whether or not the facts of the given case justify this equitable intervention. *Gemmel*, 76 Kan. at 586.

. . . .

"The written contracts, between the decedent and the various Banks, naming the defendant as the third party beneficiary, is evidence of the Decedent's intent at the time of their creation. *Winsor*, 209 Kan. at 302. There is no other written document which would establish that the decedent intended to treat his children alike. . . .

. . . .

"The above referenced cases resolve for the court the principle that statements alone, made by the defendant and the decedent, are not sufficient to impose the equitable remedy of a constructive trust. The Kansas court in *Clester v. Clester*, 90 Kan. 638 [135 Pac. 996 (1914)] provides further support for this contention."

The logical extension of this analysis is that without a writing evidencing intent of the decedent/testator or direct evidence of the fraud, there can be no equitable relief in the form of a constructive trust.

*Clester* was an action by the children of a first marriage seeking to impose a constructive trust on real estate titled in the name of their father's second wife. A portion of the real estate was purchased with an inheritance their mother received prior to her death. At the time their father died, the real estate was titled in the name of their father's second wife. In discussing the evidence, the Supreme Court stated:

"[T]here was some evidence that subsequent to the conveyances she made statements and admissions to the effect that she held the title in trust; that she stated at one time that she knew that the money with which the land was purchased came from the first wife; again that she said it was her intention sometime to pay to the appellants their mother's share. There was evidence that after the conveyances John Clester continued to exercise the same control and management of the lands as before; and a witness testified to having heard him say that he intended to fix matters so that appellants would get the land. . . .

. . . .

"The weakness in appellants' claim is the absence of any testimony to show an agreement at the time the conveyances were made by which Ida M. Clester was to hold the land in trust for the husband. Had there been testimony that such was

the agreement, the case might be said to fall within the provisions of section 8 of the act relating to trusts and powers (Gen. Stat. 1909, § 9701), and even though the agreement had been oral it would lie within the province of equity to raise a trust to prevent a failure of justice (*Rayl v. Rayl*, 58 Kan. 585, 589, 50 Pac. 501, and cases cited in the opinion). But there was *no testimony showing any promise or agreement or understanding* at the time the conveyances were made that she should hold in trust for him." (Emphasis supplied.) 90 Kan. at 640-41.

The *Clester* court placed great emphasis on the fact that there was substantial evidence indicating that the conveyance of the real estate was a gift, that the transfer was an absolute conveyance of real estate between husband and wife, and that there was no evidence whatsoever as to what the father's intention was and nothing from which a fair inference could be drawn that he intended to convey the property to his wife to be held in trust for the benefit of others. 90 Kan. at 642-43.

The *Clester* analysis of the evidence of proof necessary to establish a constructive trust was visited in *Hile v. DeVries*, 17 Kan. App. 2d 373, 836 P.2d 1219 (1992). In that case, the appellant relied on the language in *Clester* that states a constructive trust cannot be imposed absent fraud. 17 Kan. App. 2d at 374. In *Hile*, this court pointed out a seemingly inconsistent rule also cited in *Clester*: "But *Clester* also states that a constructive trust will arise 'wherever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title.'" 17 Kan. App. 2d at 374 (quoting *Clester*, 90 Kan. at 642). The apparent inconsistency between these two equitable principles was reconciled in the recent case of *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 364, 887 P.2d 1152 (1995). After reiterating the general requirement that fraud is necessary to justify imposition of a constructive trust, the *Kampschroeder* court discussed in detail the essential elements:

"An essential element of proving a constructive trust is a showing of fraud. However, there are two types of fraud, actual and constructive.

'Actual fraud is an intentional fraud, and the intent to deceive is an essential element of the action. Constructive fraud, however, is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty of purpose or intent to deceive is necessary. . . .' [Citation omitted.]

. . . .

"Absent actual fraud, there are two additional elements which are required to be proven. First, there must be a confidential relationship. Secondly, the confidence reposed must be betrayed, or a duty imposed by the relationship must be breached. [Citation omitted.]" 20 Kan. App. 2d at 364-65.

Although we have concluded there can be no confidential/fiduciary relationship existing between Deborah and Heck in the context of a claim of undue influence, such a relationship in the context of constructive fraud is determined by a different standard.

In the context of its own facts, *Kampschroeder* discussed the standards of proof necessary to show a confidential relationship and proof of a fraudulently induced agreement sufficient to establish a constructive trust.

"The element of a confidential relationship is shown by the evidence. Under the trial court's construction of the facts, Robert and Norma entered into an agreement in which each relied on the survivor to see that the assets were properly distributed. Robert placed trust and confidence in Norma to see that Errol Joe received the proper distribution of assets, and it would be inequitable to permit her to disregard the terms of that agreement." 20 Kan. App. 2d at 366.

For the purposes of imposing a constructive trust, a confidential relationship can be based on an agreement between the owner of property and another who will distribute the owner's property in a specified manner upon the owner's death. This agreement can be established by circumstantial evidence. Evidence from the owner as to his or her understanding of the agreement and independent evidence from the recipient of the property that such an agreement exists are considered direct proof of the agreement:

"Norma and Sherryl suggest that there was no direct evidence of an agreement between Robert and Norma. However, we note that in the recorded conversation between Norma and Errol Joe's wife, Norma acknowledges the existence of some understanding between her and Robert and indicates that in order to carry out that understanding, she must separate Robert's assets from her own. We consider this to be direct evidence of the existence of the agreement. Indeed, circumstantial evidence may be used to prove the existence of an agreement. *Staab v. Staab*, 160 Kan. 417, 419, 163 P.2d 418 (1945)." 20 Kan. App. 2d at 365-66.

Even though fraud must be proved by clear and convincing evidence, a party resisting a motion for summary judgment need not present that quantum of proof in resisting the motion. *Gorham*

*State Bank v. Sellens*, 244 Kan. 688, 691, 722 P.2d 793 (1989); *Credit Union of Amer. v. Myers*, 234 Kan. 773, Syl. ¶ 7, 676 P.2d 99 (1984).

In viewing the evidence in the light most favorable to Ralph, the record reflects evidence of Heck's desire to divide his estate between Deborah, Ralph, Brad, and Chris. There is evidence that Heck believed Deborah would follow his directives. Further, there is evidence that Deborah understood Heck's intention and that she intended to comply therewith. Whether this is sufficient evidence to establish that Deborah led Heck to establish or maintain her as the beneficiary on the POD accounts with the representation that she would distribute those accounts in a specified manner is a genuine issue of material fact. Whether Deborah's knowledge of her father's desire and belief that she would divide the accounts and her subsequent failure to speak amounts to constructive fraud by omission or silence is also a genuine issue of material fact. The granting of summary judgment as to Ralph's claim of constructive trust was improper. The case is therefore reversed and remanded to the district court for trial on Ralph's equitable claim of constructive trust.

We affirm the district court as to summary judgment on the claim of undue influence and reverse and remand to the trial court for further proceedings consistent with this opinion as to summary judgment on the claim of constructive trust.

Affirmed in part, reversed in part, and remanded.