(188 P.3d 23)
No. 98,352

IN THE MATTER OF THE ESTATE OF JERRY DON LANE.

Opinion filed July 18, 2008.

*W.J. Fitzpatrick*, of Independence, for appellants.

*John R. Horst*, of Caney, for appellee.

Before LEBEN, P.J., MALONE and GREENE, JJ.

LEBEN, J.: Jerry Lane's children and grandchildren contend that Deanna Lane, Jerry's second wife and widow, should have included additional property in his estate. As the administrator of Jerry's estate, Deanna did not include the farm in her list of the estate's property as she was its sole title owner. Nor did she include the leases that allowed gas storage and a cell phone tower on that farmstead. She did include half the value of some farm equipment and cattle on the basis that she and Jerry were co-owners of them, but Jerry's children and grandchildren claim that she should have included the full value of those items in the estate because they say that Jerry was the sole owner of them. Jerry's children and grandchildren, as other heirs to his estate, also claim that the district judge should not have permitted Deanna to claim the homestead and spousal allowances because she had no financial need of them. In sum, the other heirs seek to increase their inheritance by removing the allowances taken from Jerry's estate and by including the farm, the leases, and the full value of the farm equipment and cattle in the estate.

The district judge heard testimony and arguments, and he ruled firmly in Deanna's favor—so firmly, in fact, that he adopted nearly verbatim the factual findings and legal conclusions that her lawyer had submitted. The wholesale adoption of Deanna's factual findings has led the other heirs to contend on appeal that we should not pay any deference to those findings. But the findings of the district court are fully supported by the record; we cannot ignore them.

The district judge found that Deanna and Jerry didn't have an agreement on how to distribute the farm, that Deanna co-owned the contested farm equipment and cattle, that Deanna had the sole interest in the leases as the sole owner of the farm, and that Deanna was entitled to the farmstead allowance and deserved the spousal allowance under Kansas estate law. Given these findings, which are supported by the evidence presented, we conclude that the other heirs have not shown any error in the district court's rulings.

I. *We Accept the District Court's Factual Findings.*

The other heirs urge us to set aside the deference ordinarily given to the district judge's factual findings because the judge adopted all of Deanna's proposed findings nearly verbatim. But they cite to cases that explicitly reject their argument. *E.g., Ortiz v. Biscanin*, 34 Kan. App. 2d 445, 455, 122 P.3d 365 (2004) ("The district court's action of adopting Biscanin's findings of fact and conclusions of law *in toto* did not violate K.S.A. 2003 Supp. 60-252 and does not warrant our applying a de novo standard of review."). Certainly, it would be good practice for a district judge to acknowledge the adoption of a party's proposed findings and to explicitly assure us and the other party that the judge has independently reviewed them. And it would be better practice for a district judge to draft his or her own findings, but those practices are not required by *Biscanin*.

We see no reason to question the findings in this case. After trial, the district court ordered that the trial transcript be prepared and that the parties file proposed findings after the transcript was available. Deanna's attorney had the opportunity to make sure that the record supported all of Deanna's proposed findings. In addition, the district judge who heard the evidence had the opportunity to review the proposed findings against the trial transcript. Our review confirms that the record supported those findings, so we accept the facts as set out in the district court's findings and from the record.

Deanna and her first husband owned a 247-acre farm. Deanna kept the farm after their divorce in 1977. Jerry and Deanna married in 1979, and Jerry had also been married once before. They both had children from their first marriages but had no children together. Deanna was an elementary-school teacher in Cherryvale; Jerry had served as a school administrator in South Coffeyville, Kansas, and Spavinaw, Oklahoma. Jerry retired in 1994 or 1995; Deanna retired in 1999.

After they married, Jerry and Deanna operated a cattle business from the farm in addition to working as educators. Jerry was primarily responsible for buying and selling the cattle while Deanna

kept the records and did the bookkeeping. She occasionally cared for sick animals or did farm chores. The two also acquired various items of personal property or farm equipment, mostly paid for out of joint bank accounts.

At one point, Jerry and Deanna discussed dividing the farm into 40-acre parcels so that each of their children could own some land. But they ultimately rejected that plan because some of the parcels would have been landlocked given the irregular shape of the farm. The district court concluded that the two made no agreement about how the farm would be divided upon the death of one of them. The district court concluded that "[t]heir intent was that the survivor could do whatever they wanted to with the farm," a conclusion based upon Deanna's testimony.

After Jerry's death in 2004, Deanna was appointed the administrator of Jerry's estate. She did not include any interest in the farm among Jerry's listed assets and asked the probate court for a homestead allowance and a general spousal allowance against the estate. Deanna then executed a will that left all of her assets, including the farm, to her two children. She left nothing to Jerry's children.

Jerry's children and grandchildren, as the other heirs, filed pleadings that claimed Deanna held part of the farm in a constructive trust for Jerry's estate and that some personal property should have been listed solely as property of Jerry's estate with Deanna having no co-ownership rights. The other heirs claimed that an interest in two leases should have been listed as property of the estate. They also objected to the allowances. The district court ruled in favor of Deanna on all of these issues. All of those issues are now before us in a consolidated appeal.

II. *The District Court Did Not Abuse Its Discretion When It Decided That Deanna Did Not Hold the Farm in Constructive Trust for the Other Heirs.*

The other heirs claim that Deanna holds the farm in a constructive trust for their benefit and that the district judge erred in ruling otherwise. Such a trust may be imposed where it would be inequitable for the person who holds the legal title to retain the prop-

erty based upon the manner in which it was acquired. See *Garrett v. Read*, 278 Kan. 662, 673, 102 P.3d 436 (2004); *Hile v. DeVries*, 17 Kan. App. 2d 373, 374, 836 P.2d 1219 (1992). The district court is given wide discretion on whether to impose a constructive trust as an equitable decision; that decision is subject to reversal only when no reasonable person would agree with the district court's decision. *Cousatte v. Lucas*, 35 Kan. App. 2d 858, 867-68, 136 P.3d 484 (2006).

The district court did not abuse its discretion on this issue. The imposition of a constructive trust generally requires a showing of actual or constructive fraud. See *Nelson v. Nelson*, 38 Kan. App. 2d 64, 76-77, 162 P.3d 43 (2007) (stating that actual or constructive fraud must be shown to impose a constructive trust except in cases involving insurance proceeds), *rev. granted* December 18, 2007; *Cousatte*, 35 Kan. App. 2d at 870 (stating that actual or constructive fraud must be shown to impose a constructive trust); *cf. Hile*, 17 Kan. App. 2d at 374-75 (declining to determine whether fraud is required to impose a constructive trust on insurance proceeds for a case in which the district court found equities required the imposition of a constructive trust).

Actual fraud requires intentional deception. *Andres v. Claassen*, 238 Kan. 732, 741, 714 P.2d 963 (1986). The other heirs don't suggest that Deanna committed actual fraud, and none is shown. To prove constructive fraud, the other heirs must show that a confidential relationship existed between Deanna and Jerry regarding the property and that Deanna betrayed the confidence or duty that the relationship imposed. *Cousatte*, 35 Kan. App. 2d at 871.

A confidential relationship can be found where the owner of property makes an agreement with another to distribute the property in a specified manner upon the owner's death. *Nelson*, 38 Kan. App. 2d at 78. But the district court found that Deanna and Jerry had not made any agreement on how the surviving spouse would dispose of the farm. The district court then concluded that a constructive trust should not be imposed against the farm in favor of the other heirs.

To overturn this judgment on appeal, the other heirs must show that no reasonable person would have taken this view. In our re-

view, we must accept any of the district court's factual findings that are based on substantial evidence. *Cousatte,* 35 Kan. App. 2d at 867-68. Under these standards, it's quite clear that the district court's decision may not be reversed. First, it found that Jerry and Deanna did not have an agreement about how she would dispose of the property. That finding precludes constructive fraud because Deanna had no special duty or confidence without an agreement, which is a prerequisite to the imposition of a constructive trust based on constructive fraud. Second, Deanna did nothing suspicious in acquiring the farm. She received it when the marital property was divided in her divorce case, and the property has been titled solely in her name since then. Deanna did nothing fraudulent—constructive or otherwise—in acquiring the farm.

The other heirs cite cases that are readily distinguishable from the facts of this case. In *Garrett,* a married couple executed contractual wills that left all marital property to the surviving spouse on the express condition that the property then be divided among all the children. While the other heirs presented evidence at trial that Jerry and Deanna had a similar arrangement, the district judge found that no agreement existed between Jerry and Deanna, and the record supports that finding. As no agreement existed, no confidential relationship was betrayed or violated. Similarly, in *Kampschroeder v. Kampschroeder,* 20 Kan. App. 2d 361, 887 P.2d 1152, *rev. denied* 257 Kan. 1092 (1995), each spouse agreed that his or her own property would go to their respective heirs.

Last, the other heirs cite *Heck v. Archer,* 23 Kan. App. 2d 57, 68, 927 P.2d 495 (1996), in which the decedent had named his daughter as the beneficiary for some payable-on-death bank accounts. After the father's death, the daughter refused to share the accounts with her brothers. Because some evidence suggested that the daughter and her father had agreed that she would distribute the accounts equally, our court reversed a summary-judgment ruling in her favor. But the other heirs put too much stock in *Heck* because *Heck* only decided that when there is *some* evidence of an agreement, the case may not be disposed of by summary judgment. Indeed, the district judge in our case refused to grant summary judgment to Deanna because he concluded that there was *some*

evidence of an agreement in the record. But the district judge has since concluded—as a factual finding—that *no* agreement existed between Jerry and Deanna regarding the farm's disposition. Based on that factual finding, the district judge didn't err in refusing to impose a constructive trust.

III. *Substantial Evidence Supports the District Court's Conclusion That Deanna Was a Co-Owner of Various Items of Personal Property.*

Deanna listed only one-half of the value of various personal-property items in the inventory of Jerry's estate; she claimed that she was entitled to the other half as a co-owner of the property. The other heirs disagree that she co-owned some farm equipment and the cattle that were on the farm when Jerry died. The district court concluded that Deanna was a co-owner of the property. We must determine whether substantial evidence supports the district court's ruling. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

Jerry was the only name listed on some of the titles and bills of sale for the personal property at issue, and the other heirs argue that Deanna cannot be a co-owner without some written documentation in support of her claim. But married couples are not required to document their status as co-owners of their personal property. The parties' intent and conduct determine whether personal property is co-owned when acquired during a marriage. *In re Lampe*, 331 F.3d 750, 755-56 (10th Cir. 2003) (applying Kansas law); *In re Griffin*, 141 B.R. 207 (Bankr. D. Kan. 1992); see also *Wilson v. Wilson*, 37 Kan. App. 2d 564, 575, 154 P.3d 1136 (2007) (noting that the parties' intent is key to the creation of an ownership relationship under K.S.A. 58-501). In *Lampe* and *Griffin*, the court found that a farm wife had a co-ownership in farm equipment even without any written documentation.

A married couple may own property together or separately. See K.S.A. 23-201. We agree with the conclusion in *Lampe* that whether they are co-owners of specific property is determined by their intent and conduct:

"This test recognizes the practical realities of the marital relationship. Spouses do not regularly document gifts between themselves, and many spouses choose to co-mingle assets and co-pay expenses out of joint accounts without keeping the strict accounting requirements required to prove co-ownership [under more demanding caselaw tests]." 331 F.3d at 755-56.

Thus, a fact-finder should determine whether a married couple co-owned personal property based upon their intent and conduct with respect to that property.

The other heirs focus their argument about co-ownership on K.S.A. 58-501, but we do not find it controlling here. The statute distinguishes between two types of co-ownership: tenancy in common and joint tenancy. Under tenancy in common, the co-owners each own one-half of the property but do not obtain the other's interest at that person's death. With joint tenancy, the co-owners each own one-half of the property, and the co-owner does obtain the other's interest at that person's death. Under the statute, tenancy in common is presumed *unless* "the language used in such grant or devise makes it clear that a joint tenancy was intended . . . ." K.S.A. 58-501. But Deanna doesn't claim joint tenancy; she admits that she was only a tenant in common with respect to their personal property so the presumption under K.S.A. 58-501 is not actually at issue. Further, nothing in that statute suggests that a written document is required for a married couple to be co-owners of personal property; the determination of co-ownership again comes back to the parties' intent and conduct.

Although the district court's decision is somewhat confusing because of its reference to the presumptions not at issue here, the district court found that Deanna was a co-owner in the farm machinery and cattle. Jerry and Deanna acquired all of the property during the marriage; Deanna testified that they bought most of it with funds from a joint bank account that was used primarily for farm-income deposits. Deanna helped in the farm operation, cared for the cattle, hauled hay, fed cattle, and maintained the records for the farm business. Deanna testified that the two considered themselves co-owners, and the district court specifically noted "the intent of the spouses to be co-owners." An appellate court does not weigh conflicting evidence, evaluate witness credibility, or

make its own factual findings. *LSF Franchise*, 283 Kan. at 19. The district court's conclusion that Deanna was a co-owner of the cattle and farm machinery is supported by substantial evidence and must therefore be affirmed.

IV. *The District Court Did Not Abuse Its Discretion in Granting Statutory Estate Allowances to Deanna.*

Deanna took advantage of two special estate allowances provided by Kansas law. K.S.A. 59-403 provides for a spousal allowance of up to $35,000, which is set aside for the benefit of the spouse (and any minor children) and is not subject to the payment of most of the decedent's debts. K.S.A. 59-6a215 provides for a homestead allowance of either "the homestead, or in lieu thereof . . . a homestead allowance of $35,000."

The other heirs challenge the award of the spousal allowance based on a claim that the district court did not consider whether Deanna needed it. K.S.A. 59-403(b) provides for an allowance up to $35,000, "with the exact amount . . . to be determined . . . after taking into account the condition of the estate of the decedent." Under the statute, the district court "has complete discretion to determine the amount of any such allowance." *In re Hjersted Revocable Trust*, 35 Kan. App. 2d 799, 805, 135 P.3d 192, *rev. denied* 282 Kan. 789 (2006). We therefore review the district court's decision for an abuse of discretion and may reverse the decision only if no reasonable person could agree with it. *Dexter v. Brake*, 38 Kan. App. 2d 1005, 1011, 174 P.3d 924 (2008).

The district court summarized the property in Jerry's estate and listed the estimated values of that property in its final journal entry. In the same written order, the district court awarded Deanna the requested $35,000 spousal allowance. The district court was fully aware of all of the estate's assets. We do not believe that it is fair to conclude that the district court failed to take "into account the condition of the estate of the decedent" when it provided a listing and valuation of all estate property in the order granting the spousal allowance. The other heirs have not demonstrated that it was an abuse of discretion to award this allowance to Deanna, a retired teacher, even though it depleted the overall assets in the estate.

In support of their position, the other heirs cite *In re Estate of Wheat*, 24 Kan. App. 2d 934, 955 P.2d 1339 (1998). In that case, unlike this one, the district court *denied* the spousal allowance. The district court in *Wheat* found that a spousal allowance was not required because the surviving spouse and minor children had been provided for through an insurance policy. But contrary to the other heirs' argument in our case, *Wheat* did not place the burden to prove that an allowance was necessary on the person who was claiming it. Rather, *Wheat* merely held that the district court did not abuse its discretion when it denied a spousal allowance to a spouse and minor children who had received ample insurance proceeds. 24 Kan. App. 2d at 937. *Wheat* does not control the result in our case.

The other heirs challenge the award of the homestead allowance based on the finding that Deanna already owns a home. Because she already owns a home, the other heirs contend that she doesn't need a homestead allowance.

In order to resolve their objection to the homestead allowance, we must interpret the statute that presents this legal issue. We interpret the statute based on our own judgment, without deference to the interpretation of the district court. *State v. Zeit*, 39 Kan. App. 2d 364, 366, 180 P.3d 1068 (2008).

The Kansas Legislature has provided a homestead allowance for surviving spouses, K.S.A. 59-6a215, and that statute does not explicitly state that the allowance may be awarded only when the surviving spouse doesn't own a home:

> "A surviving spouse is entitled to the homestead, or in lieu thereof the surviving spouse may elect to receive a homestead allowance of $35,000. The homestead or homestead allowance is exempt from and has priority over all demands against the estate. The homestead or homestead allowance is in addition to any share passing to the surviving spouse by way of elective share."

In a prototypical family, one might presume that a married couple with children reside in a single residence. When one spouse died, the other could choose either to take the home or the $35,000 homestead allowance. In the case of Deanna and Jerry, though, their home was owned solely by Deanna, so Jerry's estate didn't include a home.

We interpret a statute in light of its purpose. *Young Partners v. U.S.D. No. 214*, 284 Kan. 397, 408, 160 P.3d 830 (2007). Other state courts have emphasized that homestead-allowance provisions are designed to protect the decedent's family and that the provisions should be liberally construed to attain that purpose. *E.g., In re Estate of Martelle*, 306 Mont. 253, 259, 32 P.3d 758 (2001) ("The homestead allowance should be liberally construed to effectuate its purpose, a public policy to protect the surviving family of the decedent."); *In re Andrews' Estate*, 123 Wash. 546, 548, 212 P. 1073 (1923) (applying liberal-construction rule to homestead-allowance statute). While this rule has not yet been applied in a published Kansas appellate case involving the homestead allowance, the Kansas Supreme Court has noted that in general "a surviving spouse's right to allowances is favored under the law and statutes dealing with the subject are entitled to liberal construction." *In re Estate of Taylor*, 205 Kan. 347, 359, 469 P.2d 437 (1970).

The homestead allowance is designed to protect the decedent's family. As Jerry's estate did not have a homestead, Deanna could not receive "the homestead" from the estate. Had the statute referred to "a homestead," perhaps one could argue that receipt of a homestead from *outside of* the decedent's estate might eliminate the right to take the $35,000 alternative allowance. But the statute says "the homestead." To the extent there is still any ambiguity, it should be resolved in favor of the statutory purpose of providing for the financial welfare of the decedent's family.

The statute adds that in lieu of the homestead itself, a surviving spouse may elect the homestead allowance instead. As Deanna has not received "the homestead" from the estate, nothing in the statutory language prohibits her from taking a homestead allowance "in lieu thereof." While Deanna did own a farm and home, which could arguably eliminate her need for the allowance, this law is intended to protect all surviving spouses regardless of whether they own a 247-acre farmstead or rent an apartment in the city.

The homestead allowance, unlike the statutory spousal allowance, is an entitlement. The legislature has said that the surviving spouse "is entitled" to it. The homestead allowance is an important

right that should not be limited by any condition unless the statute clearly provides that limitation.

The Montana Supreme Court emphasized both the "entitled to" language and the principle of liberal construction when interpreting its homestead-allowance statute in *Estate of Martelle*. The Montana court concluded that the surviving spouse was entitled to the allowance even though two homes had separately come to her through joint tenancy. The court noted that the Montana homestead-allowance statute, like Kansas', provided that the surviving spouse was "entitled to" the allowance. 306 Mont. at 258. Other than the requirement that the surviving spouse indeed survive the decedent spouse, the Montana court refused to read any additional limitations into the statute:

"The homestead allowance should be liberally construed to effectuate its purpose, a public policy to protect the surviving family of the decedent. It is an 'off the top' allowance which grants the decedent's family a vested interest apart from, and in addition to, any other rights flowing from the estate. As we stated in *Heiser*, '[t]o permit the ultimate decision to be influenced by the equities and sentiments of each particular case would thus render the homestead allowance meaningless and impossible of interpretation.'" 306 Mont. at 259 (quoting *In re Estate of Heiser*, 207 Mont. 126, 129, 672 P.2d 1124 [1983]).

The Kansas homestead-allowance statute has no provision that limits the ability of a surviving spouse to claim it if the surviving spouse also owns real estate. In light of the clear purpose of this act, we will not read such a limitation into it. Deanna was entitled to the homestead allowance, and the district court did not err in awarding it to her.

V. *The District Court Correctly Concluded that Income from a Real-Estate Lease Was a Real-Property Interest to Which Jerry's Estate Had No Claim.*

Jerry and Deanna also leased out portions of their land for gas storage and for a cell phone tower. The final issue in the case involves the right to receive payments after Jerry's death on those two leases.

The district court concluded that this issue was governed by *In re Estate of Sellens*, 7 Kan. App. 2d 48, 50-52, 637 P.2d 483 (1981),

*rev. denied* 230 Kan. 818 (1982), in which our court determined that the rights of a lessor in an oil and gas exploration lease were derived from the ownership of the land. Thus, future unpaid royalties—which would be based upon resources not yet extracted or severed from the land—were an interest in real property. But the leases in our case are different from the producing oil and gas lease in *Sellens*. Neither of the leases in our case involves the removal of any resources from the farm. The gas-storage lease allows Union Gas to store previously extracted gas under the farm; the telecommunications lease allows Liberty Cellular to construct and operate a cell phone tower on the farm.

*Sellens* is still of some help even though it's not directly on point. It distinguishes between accrued royalties for oil or gas already taken and future royalties for minerals not yet extracted. The accrued royalties for minerals already taken were personal property since they had been severed from the real estate, but the future royalties for minerals not yet taken were real-estate interests since they remained part of the real estate. The leasehold interests at issue here cannot be severed from the real estate. Thus, like the future payments for future oil and gas exploration, a lease for future use of the real estate constitutes an interest in that real estate, not personal property. Other courts have generally agreed that the right to receive future rent is an interest in real property. See 52A C.J.S., Landlord & Tenant § 982.

No other result would make sense. Deanna owned the real estate before she married Jerry, and she remained the sole owner of it after his death. Although Jerry did sign the leases, the lessees likely required his signature to protect against any possible claim he might have against the real estate. For example, if either Jerry or Deanna had filed for divorce, Kansas law would then have given each an ownership interest in the other's separate property pending the resolution of the divorce. See K.S.A. 23-201(b). But no divorce was ever filed and Jerry never obtained an ownership interest in the farm. It would be an odd legal rule indeed that would give Jerry's estate the right to receive payments for the continued use of Deanna's real estate after his own death.

The judgment of the district court is affirmed.

GREENE, J., concurring: I write separately only to emphasize my concern regarding the practice of the trial court adopting verbatim the proposed findings of one party. Although the majority opinion cites only *Ortiz v. Biscanin*, 34 Kan. App. 2d 445, 455, 122 P.3d 365 (2004), I believe there is a more widespread body of law discouraging this practice.

In *Stone v. City of Kiowa*, 263 Kan. 502, 506, 950 P.2d 1305 (1997), our Supreme Court recognized that adopting a party's findings and conclusions in their entirety " 'is the sort of shorthand that would be susceptible to abuse' " and " 'not a practice to be encouraged.' " In *LDF Food Group, Inc. v. Liberty Mut. Fire Ins. Co.*, 36 Kan. App. 2d 853, 146 P.3d 1088 (2006), *rev. denied* 283 Kan. 931 (2007), our court noted that heightened scrutiny on appeal of any findings made through this practice might be appropriate, and that "[i]ndependent consideration and judgment in determining findings and conclusions in deciding summary judgment motions are the essence of the judicial function and should not be delegated to counsel," citing *Sierra Club, Lone Star Chap. v. Cedar Point Oil*, 73 F.3d 546, 574 (5th Cir. 1996).

I agree that the record supports the findings made here, but I stress that verbatim adoption of one party's proposed findings without any assurance of an independent review of the record is clearly not the better practice and may invite heightened scrutiny of such findings on appeal.