## WALLING v. BANK OF WAYNES-BORO, GA.

### No. 332.

District Court, S. D. Georgia,
Augusta Division.

July 6, 1945.

Geo. A. Downing, Regional Atty., of Atlanta, Ga., for plaintiff.

Roy V. Harris, of Augusta, Ga., for defendant.

LOVETT, District Judge.

This is an action to restrain the Bank of Waynesboro, situated in Waynesboro, Georgia, from violating the minimum wage and record-keeping provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., in the case of its employee, Henry Lewis, employed as janitor and porter.

The Act provides:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates— * * *

"(4) * * * not less than the rate * * * prescribed in the applicable order of the Administrator issued under section 8 (29 U.S.C.A., Sec. 208)." Fair Labor Standards Act of 1938, Sec. 6(a) (4), 52 Stat. 1063, 29 U.S.C.A. § 206(a) (4).

A minimum rate for the finance industry of 40 cents per hour was prescribed by order of the Administrator effective July 17, 1944 (9 F.R. 6939).

The Act also provides:

"Every employer * * * shall * * * keep * * * such records of the persons employed by him and of the wages, hours and other conditions and practices of employment, maintained by him * * * and shall make such reports therefrom to the Administrator as he shall prescribe * * *." Fair Labor Standards Act of 1938, Sec. 11(c), 52 Stat. 1066, 29 U.S.C.A. § 211(c).

This court entered an order to show cause why a preliminary injunction should not be issued, and the case came on for hearing on May 21, 1945. Evidence and argument have been heard. Briefs have been considered. The case is ready for final decision.

In its answer filed at the hearing defendant admits that it is engaged in interstate commerce as alleged but denies that Henry Lewis, its janitor-porter, is so engaged. It also denies that it has failed to compensate Lewis in accordance with the Act

The issues, then, are: (1) is Henry Lewis engaged in interstate commerce within the meaning of the Fair Labor Standards Act, and (2) if so, has defendant complied with the minimum wage and record-keeping provisions of the Act in the employment of Henry Lewis?

Lewis' position is that of a typical small town colored handy man. Primarily he is the bank's janitor. He goes to the bank in advance of the regular opening hours to attend to the heating or cooling facilities and to open the windows and clean and dust the bank's quarters before the arrival of the other employees. Similarly, after closing time, he remains after the other employees to lock up.

In addition to his janitorial services, he also acts as porter, and in that capacity performs many duties directly connected with and involved in the general commercial banking business conducted by the defendant. A number of his duties are those which would ordinarily be performed by a bank runner or messenger. Each day he carries the bank's mail to and from the post office. On many days he goes to the post office to cash money orders which have been cashed by the bank for its customers. He often carries the bank clearances to the other local bank and brings back the clearances on the defendant bank. Also, he regularly delivers to the bank's customers all returned items, drafts for collection, cotton warehouse receipts, notices of overdrafts and other notices which the bank does not care to send through the mail. He changes the date daily on the cancellation machine and cancels all of the depositors' checks paid by the bank. He picks up some of the daily deposits of some of the bank's customers and carries them to the bank.

All of these are regular duties. Some of them are daily, some more frequent and some less frequent. Lewis acts as the link between the bank and the instrumentalities of commerce used by the bank in carrying on its business. He is the conduit through which a considerable portion of the bank's interstate business flows into the channels of commerce. Though many of his duties no doubt involve only intrastate transactions, many also involve the handling and carrying of interstate items, and it is settled law that if a substantial part of an employee's activities relate to goods moving in interstate commerce he is covered by the Act. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

It is my conclusion, then, that Lewis is engaged in interstate commerce within the meaning of the Act.

The remaining question for decision is whether or not the terms of the Act have been complied with. After being inspected by an inspector of the Wage and Hour Division and being told that records must be kept of the hours worked by Lewis, defendant directed another employee, Mrs. Naomi Scott, to tabulate his time. The evidence indicates that it is her practice to record only the time actually spent in the performance of his banking duties. He is paid a minimum of $7 per week, which would be adequate compensation for 17½ hours at 40c per hour. When Mrs. Scott's records indicate he has spent over 17½ hours in the performance of his duties he is compensated for the extra hours at the rate of 40c per hour.

However, it is apparent from the manner in which the bank operates and from the nature of the services it requires of Lewis that there are other periods of time when Lewis is standing by on call waiting for work. For these periods there has been no compensation. Such time spent by messenger employees in waiting for calls is time worked and compensation must be made therefor. Walling, Adm'r, v.

Allied Messenger Service, D.C., 47 F.Supp. 773.

"Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself * * *. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." Armour & Co. v. Wantock, 1944, 323 U.S. 126, 65 S.Ct. 165, 168.

 "In general, the answer depends 'upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call without being required to perform active work.'" Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 164.

"It is of course possible for an employer to make a number of independent contracts of employment, each one of which calls for employment at a different period of time, or to make one contract calling for separate and independent jobs at different times. Under such a contract the time between the two working periods would not be included." Travis v. Ray, D.C., 41 F. Supp. 6, 8.

In the testimony of defendant's president he undertook to establish that his trade with Lewis was of that nature. I am not so convinced. Rather it appears that Lewis was to be available during the interim.

The evidence is uncontradicted that outside of his job with the bank Lewis earned approximately $20 per week for performing janitorial service and other odd jobs for about ten other business concerns and citizens of Waynesboro. It was the contention of the defendant that Lewis performed many of these odd jobs during banking hours while he was not engaged on business for the bank. However, his own testimony, the only positive evidence on the matter, shows that all these odd jobs were performed after banking hours and that all his time during banking hours was available for use by the bank.

In his testimony Lewis also stressed the fact that he was satisfied with the terms of his employment and had no complaint to make whatsoever. Such consideration, however, is of no value. "The legislative history of the * * * Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endanger the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." Brooklyn Savings Bank v. O'Neil, 1945, 324 U.S. 697, 65 S.Ct. 895, 902; see also Tennessee Coal, etc., Co. v. Muscoda Local No. 123, 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014.

The government having established that the employment of Henry Lewis is subject to the Fair Labor Standards Act and that the defendant down to the time of the hearing has violated the minimum wage and record-keeping provisions of the Act, an injunction should issue and the prayers of the petition will be and are hereby granted.