No. 78,399
No. 78,400

LARRY WAYNE STONE and CLARENCE REX MINER, *Appellants,* v. CITY OF KIOWA, *Appellee.*

(950 P.2d 1305)

Opinion filed December 12, 1997.

*Alan C. Goering,* of Goering and Slinkard, of Medicine Lodge, argued the cause, and *Robert W. Slinkard,* of the same firm, was with him on the brief for appellants.

*Alan L. Rupe,* of Morrison & Hecker, L.L.P., of Wichita, argued the cause, and *Kelly J. Johnson,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Larry Wayne Stone, chief of police for the City of Kiowa (the City), and Clarence Rex Miner, a Kiowa police officer, filed separate suits against the City, alleging breach of implied employment contracts and seeking overtime compensation for hours spent off duty but "on call." In each case, the district court entered summary judgment in favor of the City and denied the plaintiff's request for sanctions against the City for its conduct during discovery. The appeals of Stone and Miner from the district court's decisions were consolidated.

Stone and Miner filed essentially identical petitions against the City in Barber County District Court, alleging violations of "Federal and State statutes, including, but not limited to, the Federal

Fair Labor Standards Act [FLSA]" and seeking compensation for uncompensated on-call time. Only the numbers of hours and amounts sought by the plaintiffs differed. The City removed the actions to the United States District Court for the District of Kansas. In that court, the parties agreed that plaintiffs' FLSA claims should be dismissed with prejudice and that the petitions should be amended to strike "Federal and" from the phrase "Federal and State statutes." With the elimination of any federal claims, the United States District Court remanded the cases to Barber County District Court.

Plaintiffs' amended complaints alleged that they were compensated for 160 hours of duty each month but not compensated for the time they were on call rather than on official duty. They alleged that they were required to be on call and that their freedom was severely restricted during that time. They sought compensation for time spent on call for the second half of 1990, 1991 through 1994, and the first half of 1995—a total of 5 years. Stone alleged that he had served 11,865 hours on call during that period, that his rate of pay for overtime was one and one-half times the regular rate, and that he was owed $201,211.92. Miner alleged that he had served 10,044 hours on call, that his rate of pay for overtime was one and one-half times the regular rate, and that he was owed $152,575.44. The official duty time during those 5 years would have been 9,600 hours. In other words, plaintiffs allege that they spent more time on call than on duty.

The legal basis for plaintiffs' claims was alleged to be the City's personnel rules and regulations, which provided for compensation for authorized overtime work at the rate of one and one-half times regular pay. Each plaintiff alleged that "defendant's personnel rules and regulations form a contract between plaintiff and defendant, which has been breached by defendant." In addition, the plaintiffs alleged that the City's failing to compensate them for on-call time violated unspecified state statutes. In its answers, the City denied all material allegations.

Each plaintiff filed a motion for default judgment and/or sanctions against the City. They complained that they were directed to attend a city council session where the city attorney was present

and the subject was on-call procedures, that their attorney was not notified, that they were denied the right to be represented by counsel, that their request to videotape the session was denied, and that this session amounted to an attempt to informally depose the plaintiffs.

The City filed motions for summary judgment against Stone and Miner. The City argued, among other things, that the Kansas Minimum Wage and Maximum Hours Law (KMWMHL) does not cover law enforcement personnel, that there was no express contract between the City and plaintiffs, that its Personnel Rules and Regulations did not constitute an implied contract between the City and plaintiffs, and that, even if it did, there is no provision for compensating on-call time.

The district court's memorandum opinion granting the City's motions for summary judgment is terse:

"The Plaintiffs' actions, whether based on an express contract theory or on an implied contract theory or on the provisions of the Kansas Minimum Wage and Maximum Hours law, K.S.A. 44-1201 *et seq.*, must fail. The Defendant's uncontroverted facts are not effectively controverted by the Plaintiffs.

"In addition, if there were a basis for these actions, the Defendant would not be liable because the on-call hours claimed by Plaintiffs are not compensable.

"*Armitage v. City of Emporia, Kansas*, 982 F.2d 430, *Gilligan v. City of Emporia, Kansas*, 986 F.2d 410, and *Burnison v. Memorial Hospital, Inc.*, 820 F. Supp. 549, are determinative of these cases. The on-call time, even if it existed, was not so onerous or restrictive so as to make the Defendant liable to pay overtime pay to Plaintiffs.

"The court adopts the Defendant's statement of facts and legal reasonings as if fully set out herein."

The district court denied plaintiffs' motions for sanctions. The following rationale was offered: "The mere fact that litigation is pending between the parties does not eliminate or suspend the Kiowa City Council's responsibility to oversee and supervise the Kiowa Police Department."

Additional facts will be set out as necessary to the discussion of each issue.

The plaintiffs challenge the district court's granting of summary judgment in favor of the City of Kiowa.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995).

Supreme Court Rule 141(a) (1997 Kan. Ct. R. Annot. 169) requires a moving party to set out the uncontroverted contentions of fact upon which it relies. Subsection (b) requires an opposing party to designate which of the moving party's factual contentions it controverts and to provide for each controverted contention a "concise summary of conflicting testimony or evidence."

In this case, the district court did not believe that the City's contentions were "effectively controverted by the Plaintiffs." Appellants contend that the district court's statement indicates that it made "a credibility determination," which is improper because "[i]t is not within the trial court's jurisdiction to decide credibility or to weigh evidence when making a decision regarding a summary judgment motion." Appellants further contend that the district court's entry of summary judgment against them "could be reversed for failure of the trial court" to set out the controlling issues of fact and law, citing *In re Marriage of Case*, 18 Kan. App. 2d 457, 856 P.2d 169 (1993). Supreme Court Rule 165 (1997 Kan. Ct. R. Annot. 180) provides, in part: "In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision." The City's position is that the trial court's adopting its statements of facts and conclusions of law satisfies the requirement and permits meaningful appellate review. The record does not indicate that the plaintiffs objected to the court's findings of fact and law. In *Scharfe v. Kansas State Univ.*, 18 Kan. App. 2d 103, 110-11, 848 P.2d 994, *rev. denied* 252 Kan. 1093 (1992), the Court of Appeals responded to a similar complaint:

> "Scharfe did not object to the trial court's findings at the trial court level and her failure to do so precludes appellate review of this issue. See *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 368-69, 598 P.2d 188 (1979); *Burch v. Dodge*, 4 Kan. App. 2d 503, 507, 608 P.2d 1032 (1980).
>
> "The trial court's memorandum decision incorporated the ALJ's award and satisfies the requirements set forth in K.S.A. 60-252 and Rule 165 (1991 Kan. Ct. R. Annot. 126). This issue has no merit."

There is nothing inherently wrong with a trial court's adopting a party's findings and conclusions in their entirety as long as they had been individually considered, but it is the sort of shorthand that would be susceptible to abuse. Thus, although not a practice to be encouraged, it is not, standing alone, a violation of Supreme Court Rule 165 or K.S.A. 60-252.

The City included 35 separately numbered paragraphs of contentions of fact in its memorandum in support of the motion for summary judgment. In their responses, Stone and Miner controverted 10 of the City's contentions. On appeal, eight paragraphs are at issue.

The district court's blanket conclusion that plaintiffs' had not "effectively controverted" the City's contentions was overbroad, but either was correct or a supportable conclusion within the district court's discretion in several instances:

¶ 12—Plaintiffs' attempt to controvert the City's claim that Stone's explanation of how he calculated on-call time is confused and contradictory and does not supply a record reference or "a concise summary of conflicting testimony or evidence." Thus, it does not comply with Rule 141. It was within the district court's discretion, therefore, to discount it.

¶ 13—The City stated: "Plaintiffs' concept of on-call time is further confused by the work schedules created by Stone. These schedules were written on monthly calendars and listed 'call' only on weekends." This is the same as 12 in that it does not comply with Rule 141.

¶ 18—The City stated:

> "Miner can point to only one time when he wanted to leave town and was told by the City Council that he couldn't. On that occasion, Stone had briefly resigned to start a supper club and the individual hired to replace him had quit. . . . Miner had scheduled his vacation to go to a family reunion, and he

was allowed to go once arrangements had been made with the Barber County Sheriff's Department to cover the city while he was gone."

Plaintiffs responded: "Controverted. See plaintiff's amended complaint, paragraphs 5 and 6."

K.S.A. 60-256(e) provides, in part:

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations . . . of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial."

Plaintiffs' attempt to controvert this paragraph does not comply with K.S.A. 60-256(e). It was within the district court's authority to discount it.

¶ 20—The City stated: "Neither Stone nor Miner were ever disciplined for failing to respond to a call-back. . . . On at least one occasion, City Administrator Bloodworth went out to take an accident report when neither Stone nor Miner were available." Plaintiffs responded: "Controverted. When the city administrator Bloodworth went out to the accident scene, neither plaintiff Stone nor plaintiff Miner were on the police force of the City of Kiowa." Plaintiffs relied on the affidavit of Allan Collins.

Collins' sworn testimony was that he worked as a police officer for the City from July 1984 through December 1985 and that Stone had been hired to be police chief during that time. According to appellants, Miner was hired in 1987. With regard to an incident that occurred while he was a police officer, Collins stated:

"When I worked for the City of Kiowa, Carol Bloodworth was the city manager. Carol Bloodworth was aware that police officers were on-call and once [forebade] me to leave the city limits during the weekends I was off. This was a result of a traffic accident occurring on a weekend in which no reserve officers could be located, I was gone, and the Barber County Sheriff's office could not provide assistance."

Collins did not say that Bloodworth went to the accident scene to make the report. Plaintiffs' response assumes that she did on the occasion reported by Collins, and it assumes that there was only one occasion even though the City's contention left open the possibility that Bloodworth went to an accident scene more than once.

Thus, the only conclusion that may be drawn from plaintiffs' attempt to controvert the City's contention is that Miner and Collins did not work as police officers at the same time. Plaintiffs' attempt to controvert the City's ¶ 20 does not effectively refute the contentions.

¶ 21—The City stated: "No restrictions were placed on Stone's or Miner's off-duty activities whatsoever. . . . Both were free to pursue whatever personal activities they chose when they weren't working." Plaintiffs rely on allegations in their pleadings and the affidavits of Eldon Holt, Allan Collins, and Frank Long, who served as police officers for the City between 1977 and 1985. Since the plaintiffs' claim for overtime starts in 1990, the affidavits do not directly controvert the City's contention.

In the instances listed above, the determination that plaintiffs had not shown that genuine issues of fact existed did not involve a credibility determination, contrary to the argument made by Stone and Miner. On the other hand, the district court's determinations that ¶¶ 16, 29, and 34 were not effectively controverted do not hold up on review. The response of plaintiffs is adequate for preserving the existence of an agreement for compensation of their off-duty/overtime as an issue of fact. Thus, the following issues of fact remain:

¶ 16—Whether Stone's movement was restricted when he was on call.

¶ 29—How much time Miner devoted to management of his apartments.

¶ 34—Whether the City had an agreement with Stone and Miner for compensating them for overtime.

The question is whether these issues of fact preclude summary judgment. In this regard, this court has stated the following principles:

"In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner*, 257 Kan. at 260-61.

The issue of fact in ¶ 29 appears to be of questionable materiality. The amount of time Miner had to devote to management of his rental property is not material unless it is linked to the time he spent on call and whether being on call restricted his activities. Thus, this is not a material fact of the kind that might preclude the entry of summary judgment. Paragraphs 16 and 34, the latter in particular, are material to issues in this case.

Paragraph 34, whether the City had an agreement with Stone and Miner for compensating them for the time they spent on call, can be viewed as comprising two issues. The most basic would be whether plaintiffs had an agreement with the City, and the secondary issue would be whether their agreement provided for compensating them for time spent on call. The district court seemed to say that it found no contract, express or implied. As its fallback position, however, the district court adopted the stance that, even if there were a contractual basis for plaintiffs' claims, the City "would not be liable because the on-call hours claimed by Plaintiffs are not compensable."

On appeal, Stone and Miner do not seem to be pursuing the idea that they had an express contract with the City. They do contend that the combination of the City's actions and the written personnel policies formed an implied agreement. With respect to the district court's entry of summary judgment, they note that the existence of an implied contract of employment generally is a fact question and therefore inappropriate for summary disposition.

It would be inappropriate in this case, though, to conclude that summary judgment was improperly granted because there existed a dispute about the existence of an agreement. The district court's secondary finding that, given an agreement, its terms did not provide for compensation for the time spent by Stone and Miner on call carries the analysis a step further. In *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 680, 732 P.2d 1260 (1987), this court stated: "However, only disputed 'material' facts will preclude summary judgment. If a disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact." In this regard, it merits mentioning that the implied employment agreement cases cited by plaintiffs and by the district

court in its memorandum decision involve termination of employment so that the mere existence of an agreement defuses the employment-at-will doctrine. Although specific provisions sometimes are consulted, the discharged employee in those cases is not entirely dependent on them for the relief sought. The mere existence of an agreement forms a basis for relief. In contrast, in the present case, the plaintiffs are reliant on specific provisions for compensation for hours worked above a specified number and at a specified rate and not that they have an implied contract for employment.

According to plaintiffs, the Statement of Personnel Policies in effect when they began working as police officers for the City contained the following pertinent provision:

"The normal workweek, except for policemen, shall be 40 hours, consisting of 8 hour work days. The normal tour of duty for policemen shall consist of 28 consecutive days on a schedule to be approved by the City Administrator. No employee shall be permitted to work in excess of 40 hours or a normal tour of duty except when an emergency exists or overtime work is necessary to carry out essential services of the City as determined by the City Administrator.

"Work in addition to 40 hours per week shall be considered overtime work except for members of the police department when work in excess of 220 hour[s] per tour of duty shall be considered overtime work."

That Statement of Personnel Policies also provided the following: "Overtime work shall be paid at one and one-half times the employee's regular rate of pay." The final sentence of the statement authorized amendments to be made "from time to time as deemed necessary by the mayor and council." Then, according to plaintiffs, several years later, they were given a new document—Personnel Rules and Regulations. It contained the following provisions:

"The normal work week for general employees, which includes all employees other than police officers and firefighters, shall be 40 hours, consisting of five eight-hour days. Full-time personnel employed in departments operating on a 24-hour basis, other than police officers and firefighters, shall work not fewer than eight hours per day, five days per week, on a schedule to be assigned by the department head."

The document further provided:

"Compensation for authorized overtime work shall be at the rate of one and one-half times the employee's regular rate of pay."

As Stone and Miner concede, compensation for time on call is not mentioned in either version of the personnel manual. Plaintiffs seem to assume that the terms on call and overtime are interchangeable, but they suggest no basis for the assumption. In the absence of some provision for on-call time being treated as overtime work and/or being compensated as overtime work, it cannot be said that there was an agreement between plaintiffs and the City on the question.

Plaintiffs seem to suggest that the inquiry should not be limited to the text of the personnel policies. They assert that a combination of the City's actions and the written personnel policies formed the implied contract of employment. They do not, however, assist the court in finding a provision or precedent in the City's practices for compensating their on-call time. Instead, plaintiffs reviewed cases involving wrongful discharge in violation of implied contracts of employment, which led them to conclude that their "longevity, good performance, raises, employer's assurances and statements of the policy manual" formed an implied contract. The link they attempt to forge with compensation for on-call time is the following: "Implied in law and associated with every employment agreement is the duty of the employer to pay the employee for work that is done." Assuming that "work that is done" equates with on-call time begs the question. If an implied contract existed between plaintiffs and the City, it required the City to pay for overtime and not on-call time. Thus, the existence of such an implied contract does not present a genuine issue of material fact which would preclude the entry of summary judgment.

This does not end our inquiry. In arguing the existence of an implied contract, plaintiffs do not rely solely on the City's personnel rules and regulations. When necessary to fill in the blanks, they rely on specific statutory provisions of the KMWMHL. Elsewhere, plaintiffs advocate this court's adopting the test applied in federal courts for determining the merit of claims for on-call compensation under the FLSA. They quote the following: "[T]he correct ap-

proach remains to evaluate all of the circumstances surrounding the restrictions on an employee's personal pursuits and to determine whether the time is spent predominantly for the employer's benefit or for the employee's." *Burnison v. Memorial Hosp., Inc.,* 820 F. Supp. 549, 553 (D. Kan. 1993).

The threshold for the federal court approach, of course, is a legal basis for the compensation claim. In the cases cited by plaintiffs, the federal statute creates the cause of action. In the present case, plaintiffs concede that the federal statute does not apply to their police department, which has fewer than five employees. They contend that the state statute would apply only in the event that no contract is found. The City argues that summary judgment was appropriate regardless whether plaintiffs' cause of action is in contract or under the state statute.

K.S.A. 44-1204 provides in part that an employer will be in compliance with the KMWMHL

"(b) . . . with respect to . . . any employee . . . who is engaged in . . . law enforcement activities . . . and who is paid compensation at a rate of not less than one and one-half (1½) times the regular rate at which such employee is employed:

(1) In any work period of twenty-eight (28) consecutive days in which such employee works for tours of duty which in the aggregate exceed two hundred fifty-eight (258) hours."

Plaintiffs predictably contend that the City violated the KMWMHL because they worked more than 258 hours every 28 days and were not compensated at one and one-half times regular pay. They fail to take into consideration that hours worked under the statute might not necessarily include hours on call.

K.S.A. 44-1207(a) authorizes promulgation of regulations to carry out the purposes and provisions of the KMWMHL. K.A.R. 49-30-3(a) defines "hours worked" as

"any period of time during which the employee is performing services for an employer or is required to wait or remain on call by an employer when:

. . . .

(6) The time is spent by an employee who is on call and required to remain at a specified place to await possible call to perform a work assignment for the employer and is prevented from using the time for his or her own personal benefit by such employer requirement."

The City states that there are no cases interpreting this regulation, but that there are cases interpreting on-call requirements under the FLSA, *Burnison* referred to earlier, among them. The City further asserts that there is substantial similarity between the federal regulation governing on-call compensability and K.A.R. 49-30-3 so that the federal cases provide reliable guidance. The federal regulation provides, in part:

"An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'. An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call. (*Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Handler v. Thrasher*, 191 F. 2d 120 (C.A. 10, 1951); *Walling v. Bank of Waynesboro, Georgia*, 61 F. Supp. 384 (S.D. Ga. 1945).)" 29 C.F.R. § 785.17 (1997).

In the present case, there is no contention that plaintiffs were required to remain on the City's premises while they were on call. Nor does it appear from the materials presented to the district court on the motion for summary judgment that there was a mandatory response time for plaintiffs while they were on call.

In *Burnison*, the defendant hospital sought summary judgment against its employees, emergency medical technicians and paramedics, on their claim for overtime compensation for on-call time under the FLSA. The federal district court stated the applicable principles of law:

"The test for determining whether the plaintiffs' time spent on call is compensable under the FLSA is whether the 'time is spent predominantly for the employer's benefit or for the employee's.' *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 168, 89 L. Ed. 118 (1944). Application of the test ' "requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances.' " *Gilligan v. City of Emporia*, 986 F2d 410, 412 (10th Cir. 1993). ' "Resolution of the matter involve[s] determing the degree to which the employee could engage in personal activity while subject to being called." ' *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1537 (10th Cir. 1991) (quoting *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653, 654 [10th Cir. 1988]). Stated another way, the court must determine whether the restrictions on the employees' on-call time are so burdensome as to render it time predominantly

spent for the benefit of the employer. *Gilligan, supra,* at 412." 820 F. Supp. at 551.

The hospital employees worked a 25-hour shift, which was spent entirely at the hospital. It was called the "first out" duty period.

"During the 24 hours following the 'first-out' duty period, two members of the three person crew who worked the 'first-out' period are 'on-call' or 'second out.' Persons on-call are paid at $\frac{1}{10}$ regular rate unless they are called out. Then they are paid at overtime rates. Plaintiffs contend they are entitled to *full* compensation during the entire 24 hour on-call period.

"During the next 24 hours, all crew members are completely relieved of duty. No claim is made for compensation during this period. The cycle then repeats." 820 F. Supp. at 552.

The restrictions on the employees' use of their on-call time included that they do the following:

wear a pager

remain within city limits of McPherson

shift to heightened state of readiness if an emergency call is received

report to the hospital within 5 minutes if another emergency call is received while the on-duty crew is out on the first call. 820 F. Supp. at 552.

On average, they had to respond to 1.1 to 1.4 calls per 24-hour period. While recognizing the importance of the frequency of calls as a determining factor, the federal district court rejected the argument that it was the determining factor:

"[T]he court believes the correct approach remains to evaluate all of the circumstances surrounding the restrictions on an employee's personal pursuits and to determine whether the time is spent predominantly for the employer's benefit or for the employee's. [Citation omitted.] The employee must show his or her free time has been severely restricted for on-call time to be compensable under the FLSA. [Citations omitted.]" 820 F. Supp. at 553.

The federal district court also noted that all but one of the FLSA on-call compensation cases decided by the Tenth Circuit Court of Appeals had favored the employer:

"[E]xcept for *Renfro,* each of the on-call cases it had previously decided had found that although the employees' activities were somewhat restricted by their on-call status, their on-call time was not spent *predominantly* for the employer's benefit.

It noted that the frequency of the call backs in *Renfro* was a pivotal distinction in the court's determination that the firefighters' on-call time was compensable. [Citation omitted]. In *Renfro*, the plaintiffs were called back on average 3 to 5 times per day." 820 F. Supp. at 553.

There are significant factors weighing in favor of this court's accepting the guidance of the federal cases on the issue of on-call compensation. The federal regulation under the FLSA seems to have essentially the same objective as the state regulation under the KMWMHL. Indeed, the analysis in cases interpreting and applying the federal regulation tracks the wording of the state regulation, *i.e.*, was the employee "prevented from using the time for his or her own personal benefit"? There do not seem to be any pertinent state cases. The approach taken by the federal courts in the Tenth Circuit in on-call compensation cases under the FLSA seems reasonable. Considering these factors, the reasoning set out in *Burnison* is instructive and persuasive.

Applying the reasoning set out in *Burnison*, the ultimate question in the present case would be how much interference with their personal pursuits was experienced by Stone and Miner by virtue of their on-call status. We have seen that one of the disputed contentions of fact centered on whether Stone's movement was restricted when he was on call. The federal district court was faced with similar circumstances:

"The court is cognizant of its obligation not to grant summary judgment in the face of disputed issues of material fact. The fact that the parties have filed cross-motions for summary judgment does not lessen this obligation or authorize a trial by affidavits. While at first blush it might seem that disputes of material fact exist with respect to the on-call issue, closer examination shows otherwise. This is because the overarching decision to be made is not whether there are disputed issues of material fact regarding the nature and extent of the restrictions applicable to each plaintiff, but rather whether the restrictions on the employees' on-call time are so severely burdensome as to render the on-call time predominately spent for the benefit of the Hospital. *Gilligan, supra*. Using this standard, it is quite apparent that even when the facts are considered most favorably to the plaintiffs, their on-call time is predominately their own, not the Hospital's.

"The law in this circuit is clear: the mere fact that the plaintiffs may not use their on-call time as they wish or that they may have to spend some time at home that they otherwise might spend elsewhere is not sufficient to make on call time compensable under the FLSA. [Citation omitted.]" 820 F. Supp. at 555.

Plaintiffs have made much of the City's failure to furnish pagers for them so that they may leave their houses while on call. The plaintiffs in *Burnison* wore pagers. This is not a ground on which *Burnison* may be distinguished, without more. As we have seen, the court is to consider the circumstances as a whole. In the present case, neither Stone nor Miner had a mandatory response time imposed on him. In contrast, in *Burnison* the plaintiffs were required to report to the hospital within 5 minutes. The federal district court was of the opinion that if there was a tether on the EMT's and paramedics, it was the short, mandatory response time. Nonetheless, the court found that their "freedom of movement or ability to engage in activities is [not] so severely restricted by the five minute response time that the plaintiffs' time is not their own." 820 F. Supp. at 555.

The federal district court concluded its discussion of the on-call issue as follows:

· "Finally, it is reasonable to infer (and there is no evidence to the contrary) that the plaintiffs knew when they hired on about the on-call policy and that it would restrict their activities. While this knowledge, by itself, does not mandate judgment for the Hospital, consideration of the circumstances as a whole requires the court to observe that the plaintiffs were not forced to take a job with the hospital or to remain employed there if the on-call policy, *as applied to his or her own circumstances*, operates so restrictively that he or she cannot lead a 'normal' life." 820 F. Supp. at 555.

In the present case, too, there is no contention that Stone and Miner accepted employment as police officers for the City without knowing of the on-call requirement.

We conclude that the plaintiffs' on-call time is noncompensable under the KMWMHL and the district court's entry of summary judgment should be affirmed. "A district court's reasons for its decision are immaterial if the ruling was correct for any reason." *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, Syl. ¶ 3, 863 P.2d 364 (1993).

We next consider the district court's refusal to impose sanctions against the City. Plaintiffs initiated this lawsuit in July 1995. On July 8, 1996, Stone and Miner were notified by memoranda from the Kiowa City Council that they were to attend an executive ses-

sion of the Kiowa City Council to discuss performance of police services. Although the memoranda were individualized in other respects, both featured the following introductory paragraphs:

"The purpose of this memorandum is to discuss with you significant problems with your performances over the past several months. As you are aware, the City Council [adopted] a Plan for the Improvement of the City of Kiowa Police Department in March. The Council adopted the Plan due to numerous citizen complaints about police performance, as well as the Council's own concerns regarding public safety. The Plan incorporated the recommendations of E. Louis Halsig, the independent consultant retained by the Council to review the Kiowa Police Department's operations.

"What follows is a list of incidents, broken down by topic, which have occurred subsequent to the adoption of the Plan. The mayor and members of the City Council are concerned that these incidents reflect a pattern of noncompliance with the Plan, jeopardizing the public safety and the efficient and effective performance of police services in Kiowa. In order to discuss these matters with you, your attendance is required at the July 8, 1996 City Council meeting."

Stone appeared at the meeting but refused to participate without counsel, on the advice of his attorney. Stone's request for permission to videotape the meeting was refused. An audio tape was made of the meeting by the City Council, and a transcript was prepared from that tape. Miner stated that he had not talked with his attorney, and he participated in the meeting with the understanding that its purpose would be to solve problems that had arisen in implementing the City's plan for improving police protection. Robert Christensen, the Kiowa city attorney, was at the meeting. From the transcript, it appears that Christensen did most, if not all, the talking for the City. It does not appear that Christensen's name is on the pleadings or briefs in the present case.

Plaintiffs sought default judgment and/or sanctions against the City based on their perception of the meeting as an improper communication by counsel for the City with the plaintiffs in this lawsuit. They alleged violation of MRPC 4.2 (1997 Kan. Ct. R. Annot. 349), which states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." They also alleged that the meeting was a ruse

to "informally depose the plaintiffs to gather more evidence in defense of their lawsuit" and, thus, a violation of unspecified rules of civil procedure. They relied on *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 715 P.2d 2 (1986), which involved a trial court's refusal to permit the live testimony of the plaintiff's expert witness after the witness, without identifying his role in the litigation, inspected defendant hospital and questioned hospital staff on the eve of being called as a witness. The circumstances bear no similarity to those in the present case.

The City urged the district court to deny the motion on the ground that the rule of professional conduct cited by Stone and Miner did not prohibit the communications that occurred at the executive session. Attached to the City's response was the affidavit of Christensen, which stated that "the subject matter of the lawsuit never came up."

The district court denied the motion. The only reasoning revealed in the district court's order is the following: "The mere fact that litigation is pending between the parties does not eliminate or suspend the Kiowa City Council's responsibility to oversee and supervise the Kiowa Police Department." Although a correct statement, it is not determinative of the issue without further analysis.

On appeal, the plaintiffs have added nothing to the argument they made in the trial court. The standard of review of a trial court's disposition of a motion for sanctions is abuse of discretion. *Richards v. Bryan*, 19 Kan. App. 2d 950, 967, 879 P.2d 638 (1994). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997).

The following portion of the Comment to MRPC 4.2 sheds some light on this issue:

"This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter.

Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter." 1997 Kan. Ct. R. Annot. 349-50.

Plaintiffs' amended petitions show that the subject of this lawsuit is compensation for time spent by the City's employees while on call from mid-1990 to June 30, 1995. The stated subject of the memorandum sent to Miner was "Police Improvement Plan—Incidents of Noncompliance." The stated subject of the memorandum sent to Stone was "Police Department Plan—Incidents of Noncompliance." As noted earlier, the introductory paragraphs of the memoranda are identical and refer to the City Council's adoption "in March" of "a Plan for the Improvement of the City of Kiowa Police Department." It seems clear that all references are to the same plan and that it was adopted in March 1996. Thus, there is no overlap between the subject matter of the litigation and the stated subject matter of the memoranda.

With regard to the subject matter of the meeting, there is in the record the affidavit of Christensen and the transcript. In addition to that portion of the affidavit which was quoted earlier, the following statements are germane:

"4) Mr. Miner remained, and the performance problems outlined in a memorandum provided to him were discussed. Only issues relating to deficiencies in Mr. Miner's job performance were discussed, and the subject matter of this lawsuit never came up.

"5) The only reference I made to this lawsuit was to assure both Mr. Stone and Mr. Miner that it was not the reason for this executive session and that the subject matter of the lawsuit would not be discussed.

"6) The purpose of the executive session was not to obtain further information regarding the subject matter of this lawsuit. There was no intent to breach plaintiffs' attorney-client privilege with their counsel, and in fact no such thing happened. Rather, the sole purpose for this executive session was to discuss the job-related performance problems of Mr. Stone and Mr. Miner."

Examination of the transcript shows that Christensen's account of the meeting is accurate. Thus, although the City's failures to give plaintiffs advance notice of the meeting and to inform counsel may not conform to the code of common courtesy, plaintiffs have not

shown that the City should be penalized for requiring Stone and Miner to attend the meeting. We find no abuse of discretion in the trial court's refusing to impose sanctions against the City.

Affirmed.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned. ▌