No. 122,627

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of MAX R. SAIZ.

SYLLABUS BY THE COURT

1.

A court has the inherent authority to enter sanctions that are reasonably necessary for the administration of justice so long as the sanctions are not inconsistent with the relevant statutes.

2.

Since 1897, courts in Kansas have also had the statutory authority to find someone in contempt of court. K.S.A. 20-1201 et seq. A court may sanction the failure to comply with an order in a civil case through the indirect contempt of court procedure set out in K.S.A. 2020 Supp. 20-1204a.

3.

A district court has the authority to impose sanctions, even in Sexually Violent Predator Act cases, for the failure of a party to comply with court orders. But the scope of that authority is not unlimited. The court cannot order a sanction that is specifically prohibited under the Sexually Violent Predator Act.

4.

Before finding a party in indirect contempt of court, the court must follow the statutory procedures set out in K.S.A. 2020 Supp. 20-1204a.

1

5.

Because of its potency, a court must exercise its power to sanction a party for noncompliance with a court order with restraint and caution. Courts must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed May 14, 2021. Reversed and remanded with directions.

*Brant M. Laue*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

ARNOLD-BURGER, C.J.: The State appeals the district court's order releasing Max R. Saiz from his civil commitment as a sexually violent predator under K.S.A. 59-29a01 et seq. (SVPA). The State argues the district court improperly ordered Saiz released from the program without sufficient legal or factual basis and that Saiz failed to show probable cause existed to believe his condition had significantly changed to justify his placement on transitional release. Because the district court abused its discretion in ignoring the procedural requirements of the SVPA and erroneously concluded that the State violated a prior order, we reverse the order of release and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

In 2001, the State successfully petitioned the court to involuntarily commit Saiz as a sexually violent predator under the SVPA, based on his previous convictions. Those

2

convictions involved sexually violent crimes against a three-year-old and a four-year-old child and an adult female.

Since his commitment date, Saiz has received nearly annual examinations recommending his continued commitment and treatment as a sexually violent predator. From 2003 to 2005, Saiz had his parole revoked for threatening another patient, so the court did not conduct any annual reviews during that time.

Saiz has filed several petitions for transitional release or conditional release. One of these petitions led to a ruling by Finney County District Judge Michael Quint in July 2016, finding that Saiz

> "has shown sufficient progress that he should be in Phase 4 'Relapse Prevention' with an opportunity to show progress and readiness to enter Phase 5 'Transitional.' In preparation for that evaluation progress, Mr. Saiz shall be given the documented opportunity to take all classes and access to all programs that are directed to prepare him for all tests and evaluations necessary to move to the transitional stage. Said staff evaluation shall be held no sooner than 6 months, nor longer than 12 months from this date and subject to further court oversight."

In May 2017, Judge Quint issued a supplemental ruling and noted "the Court's prior Order did not order Mr. Saiz to be placed in transitional release, conditional release or final discharge."

Saiz filed the current petition in September 2018. In the petition, he asserted that the State failed to follow the district court's previous order and that he "has achieved a level of advancement in his treatment" that warrants either transitional release or consideration for conditional release or actual discharge from the program.

3

The State responded and refuted whether Saiz was eligible for transitional release, and it also contended the court lacked jurisdiction to consider a request for conditional release or final discharge because Saiz was not currently on transitional release.

The district court, with Judge Quint presiding, held a hearing in August 2019. At the outset, the State argued that the hearing should be limited to an annual review while Saiz' counsel argued the hearing should also encompass all the allegations in his petition, including the issue of failure to comply with the court's prior order. The court determined it would be going forward on both matters, explaining, "This is both an annual review for Mr. Saiz, but it's also a continuation of the Court's order from [2016] that is on the table and whether or not the State has been in compliance. So both of those issues as far as I am concerned are issues that are relevant for today's hearing."

Saiz' counsel presented testimony from three witness:  Dr. Stanley Mintz, as well as both Saiz and his wife Lindsey. Dr. Mintz was a licensed psychologist who the district court appointed as an independent examiner to evaluate Saiz. The State presented testimony from Keri Applequist, the assistant clinical director for the Sexual Predator Treatment Program (SPTP); Scott Wilson, the licensed clinical psychotherapist who met with Saiz and authored his 2018 and 2019 annual examinations; and Dr. Marc Quillen, the program director and chief forensic psychologist of the SPTP.

In December 2019, the district court issued a journal entry and order for release, finding, relevant to this appeal, that the previous order from 2016 "remains the Law of this case." As for that order, the court then found:

"12.    This Court found and ordered Mr. Saiz to be placed in Relapse Prevention and instead he was placed in Skill Acquisition, despite 16 years of 'acquiring' skills under the previous program.

4

"13.    Instead of moving to Reintegration and Transition, he was, in 2016, returned to the lowest level to start over, notwithstanding this Court's Order.

"It is uncontroverted that in violation of this Court's Order, he was denied access to any program deemed by the LSH [Larned State Hospital] needed to achieve 'Reintegration' or 'Transition'.

"14.    State's witnesses testified that there were 283 men currently at the LSH Sexual Predator Unit, which 200 are in the first tier and 51 are deemed in the higher tier. Dr. Quillen testified that 20 men were in Reintegration and 19 in Conditional Release. In response to a direct question, Dr. Quillen answered that only 10 men have been 'released' and 45 have died waiting to go through the process. When Mr. Saiz challenged him that it was 54 men who have died, Dr. Quillen did not challenge that number.

"15.    During our hearing, Dr. Quillen announced that Mr. Saiz had, for the second time in a year, failed by having a reaction during the 'Lie Detector Test' despite answering the questions asked with an appropriate and proper verbal response. It is the Court's understanding, that he is stuck in the lowest tier together with the other 200 men who are likewise stuck there by what many, including the Supreme Court, would be considered pseudoscience. The 'failures' on the stress test will allegedly prevent him from moving up for a year, or until he has two stress tests that he passes.

"16.    Mr. Saiz has been in custody of the State for 24 years running since his last conviction. He's statistically, 5 times more likely to die in custody than be released under the current structure of his detainer.

"This Court finds that the State of Kansas has failed to follow the Court's Order of 2016. Mr. Saiz'[] detainer is not for any legitimate, scientific, evidentiary, or therapeutic purpose or reason, and that he should be and is Ordered released effective no later than February 1, 2020."

The State moved to stay Saiz' release pending appeal. Because Judge Quint had retired about two weeks after issuing the ruling, the case was reassigned to a different

judge, who ultimately granted the stay after conducting a hearing and considering arguments from counsel.

ANALYSIS

The State argues that the district court's December 2019 decision ordering the release of Saiz from the SPTP was not supported by a sufficient legal or factual basis. In essence, the State contends the court ignored the procedures established in the SVPA and that "Saiz was not eligible for any type of release or discharge as a matter of black letter law."

Resolution of an issue regarding release under the SVPA generally involves interpretation of the SVPA, which presents a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). That said, Saiz asks this court to review the district court's decision for an abuse of discretion, arguing that the court's rationale for ordering his release was a sanction that stemmed from the State's noncompliance with a previous court order. See *Stone v. City of Kiowa*, 263 Kan. 502, 518, 950 P.2d 1305 (1997) (reviewing court's imposition of sanctions for an abuse of discretion). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

We agree that the clear language used by Judge Quint in his order established that he ordered Saiz released based on his finding that the State had violated a previous court order. So we examine whether the district court had the legal authority to order Saiz' release as a sanction for noncompliance with its previous order, whether there was a factual basis to conclude that the State had violated the court's previous order, and whether the sanction was reasonable and not arbitrary or fanciful.

6

*The district court has the legal authority to order sanctions against a party for failure to comply with a court order.*

The first question we face is whether a district court has the legal authority to sanction a party for noncompliance with a court order. The answer is yes, even in an SVPA case.

The district court did not state the legal basis for its ruling but Saiz argues that it could rely on its "inherent powers" to order Saiz' release as a sanction for the State's failure to comply with the court's 2016 order. See *Beal v. Rent-A-Center of America, Inc.*, 13 Kan. App. 2d 375, Syl. ¶ 5, 771 P.2d 553 (1989) (dismissal with prejudice was not an abuse of discretion where party disregarded court orders, failed to attend hearings, and disregarded discovery requests).

A court has the inherent authority to enter sanctions that are "reasonably necessary for the administration of justice" so long as the sanctions are not inconsistent with the relevant statutes. *Wilson v. American Fidelity Ins. Co.*, 229 Kan. 416, 421, 625 P.2d 1117 (1981). This power exists regardless of whether there is any statutory authority for sanctions. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 926, 128 P.3d 364 (2006). But since 1897, courts in Kansas have also had the statutory authority to find a party in contempt of court. K.S.A. 20-1201 et seq. A court may sanction the failure to comply with an order in a civil case through the indirect contempt of court procedure set out in K.S.A. 2020 Supp. 20-1204a.

And since the Kansas Rules of Civil Procedure govern the SVPA, a court may exercise that same authority to enter sanctions in an SVPA proceeding. See K.S.A. 2020 Supp. 59-29a04(g) ("Pre-commitment proceedings, post-commitment proceedings, including conditional release and final discharge and other court proceedings are civil in nature. Such proceedings shall follow the procedures set forth in chapter 60 of the Kansas

7

Statutes Annotated, and amendments thereto, except as expressly provided elsewhere in the [SVPA]."); *In re Care & Treatment of Jones*, 57 Kan. App. 2d 808, 815, 459 P.3d 827, *rev. denied* 311 Kan. 1045 (2020) (Kansas Rules of Civil Procedure apply in SVPA proceedings unless the SVPA specifically provides otherwise—thus allowing for motions to dismiss and motions for summary judgment.). Before finding a party in indirect contempt of court, the court must follow the statutory procedures set out in K.S.A. 2020 Supp. 20-1204a. We pause to note that the State does not allege that the procedure used here deviated from that required by K.S.A. 2020 Supp. 20-1204a.

We have no trouble finding that a district court has the legal authority to impose sanctions, even in SVPA cases, for the failure of a party to comply with court orders. But the scope of that authority is limited. The court cannot order a sanction that is specifically prohibited under the SVPA. So we next examine whether the court's order was prohibited under the SVPA by examining its required procedures.

Under the SVPA, there is a hierarchy of stages before the court may release a sexually violent predator. A person may only be granted final discharge from the program after at least five years in conditional release. K.S.A. 2020 Supp. 59-29a08(b). And a person must successfully complete the transitional release phase before being placed in conditional release. There is no dispute that Saiz has never made it to transitional release, let alone conditional release, and later final discharge. Nor could he have been since only three years had passed since the 2016 order placing him in relapse prevention (level four) with the opportunity to move to transitional release (level five).

A district court does have the statutory authority to move a patient into transitional release but only after following a specific procedure. While in custody, a sexually violent predator is entitled to a yearly review of his or her mental condition to determine if he or she is eligible for movement into the next procedural stage. For a petition for transitional release, the results of the annual examination are filed with the district court that

8

committed the person and a written notice is given to the person explaining his or her right to petition the district court for transitional release over the State's objection. K.S.A. 2020 Supp. 59-29a08(a). Because of a 2017 legislative change, the person must file a request for an annual review hearing within 45 days of the court filing the written notice. K.S.A. 2020 Supp. 59-29a08(b). At that hearing, the confined person bears the burden of showing probable cause to believe their mental condition has significantly changed so that they are safe to be placed in transitional release. K.S.A. 2020 Supp. 59-29a08(d). After such a showing, the court then holds another hearing where the State must show beyond a reasonable doubt that the person's mental condition remains so that it would not be safe to place the individual in transitional release. K.S.A. 2020 Supp. 59-29a08(g). If the court is not convinced, the court shall order the person to "remain in secure commitment," but otherwise shall order the person be placed in transitional release. K.S.A. 2020 Supp. 59-29a08(h).

It was such a petition for transitional release, filed after Saiz' 2013 annual review, that led to Judge Quint's 2016 order requiring that the State place Saiz in relapse prevention (not transitional release) to ready him for transitional release in the future.

> "[Saiz] has shown sufficient progress that he should be in Phase 4 'Relapse Prevention' with an opportunity to show progress and readiness to enter Phase 5 'Transitional.' In preparation for that evaluation progress, Mr. Saiz shall be given the documented opportunity to take all classes and access to all programs that are directed to prepare him for all tests and evaluations necessary to move to the transitional stage. Said staff evaluation shall be held no sooner than 6 months, nor longer than 12 months from this date and subject to further court oversight."

Whether that was an order that Judge Quint could legally make is irrelevant now because the State failed to pursue an appeal.

Two years later, Saiz filed the current petition and in it he requested, as part of his 2018 annual review, transitional release, conditional release, or discharge. He also alleged in his petition that the State failed to follow Judge Quint's 2016 order, that he had filed a show cause order for contempt, and that the State had not responded. Judge Quint advised the parties the hearing would be an annual review and release hearing as well as a contempt hearing.

As to the allegation of contempt, Saiz alleged that the State had not given him a chance to take classes and access all programs necessary to prepare for transitional release due to a lack of funding for those programs—thus the State failed to follow Judge Quint's 2016 order. During the hearing on his petition, Saiz presented a compelling case related to the impossibility of compliance when the State fails to staff programs due to shortages. In addition, testimony from psychologists and staff members, as well as Saiz himself, thoroughly examined whether the State should move Saiz to transitional release. The evidence was conflicting. After the presentation of evidence the district court could have made a probable cause finding and ordered that Saiz receive a hearing on transitional release under K.S.A. 2020 Supp. 59-29a08(g). But the judge had no authority to order conditional release or discharge under the SVPA. Because those options were unavailable to him under the SVPA, he could not bypass those requirements by imposing a sanction of discharge from the program contrary to the statute.

For these reasons, the district court's decision to release Saiz was a legal error because the court ignored its statutory role under the SVPA.

*The State complied with the district court's 2016 order.*

The record also shows the court erred in finding that the State violated the 2016 order. As mentioned, the court later clarified its 2016 order by noting that it "did not

10

order Mr. Saiz to be placed in transitional release." Instead, the court merely directed the SPTP place Saiz on phase four of the program as it then existed.

A review of the record shows that the SPTP staff moved Saiz into phase four on August 2, 2016—about two weeks after the district court's 2016 order. He remained in phase four for about a month, at which point he received a notification that "his behaviors have not demonstrated the level of self-regulation expected of an individual on Phase Four." In particular, Saiz reportedly refused to participate in some of his treatment groups, made "derogatory and insulting comments to staff," and "threatened to punch a peer in the mouth." As a result, the SPTP staff returned Saiz to phase two because an individual on phase four "should have full control of their emotion regulation and should not be threatening other residents or staff." So even though the district court's conclusion that "[i]t is uncontroverted that in violation of this Court's Order, he was denied access to any program deemed by the LSH needed to achieve 'Reintegration' or 'Transition'" has some basis in fact, it ignores the fact that Saiz violated other requirements of phase four, which caused SPTP staff to return him to an earlier phase unrelated to the availability of programming.

For these reasons, the district court's decision to release Saiz as a sanction for the State's failure to comply with its 2016 order was a factual error because the State did comply.

*The district court's sanction was unreasonable.*

Reviewing the transcript of the proceeding as well as his order, it becomes obvious that Judge Quint was frustrated with the failure of the Larned State Hospital (LSH) SPTP to graduate patients from the program. He mentioned it in his 2016 order and again in his order in this case. He expressed his concern that only 10 patients since the beginning of the SPTP had achieved total discharge and 54 had died. He reflected his belief that

11

patients in the program were being held based on pseudoscience with no realistic opportunity of being released. He concluded by finding that the State disregarded his 2016 order and that Saiz' "detainer is not for any legitimate, scientific, evidentiary, or therapeutic purpose or reason, and that he should be and is Ordered released effective no later than February 1, 2020."

But, the district court's responsibility under the SVPA is not to direct the treatment of committed persons. This court has repeatedly recognized in sexually violent predator cases that courts should defer to the judgment of mental health professionals on the treatment staff of the SPTP about which treatment methods are appropriate for a particular person. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 309, 263 P.3d 199 (2011) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 73 L. Ed. 2d 28 [1982]); *Merryfield v. State*, 44 Kan. App. 2d 817, 821, 241 P.3d 573 (2010) (same).

At the 2016 hearing, Saiz indicated that he was not requesting conditional release or final discharge. To order him discharged just three years later without obtaining the other treatment modalities that prepare him for life outside the institution was unreasonable. The staff who testified from LSH expressed concern that Saiz was not even ready for transitional release, let alone complete discharge. They concluded that if Saiz were to skip phases and go directly to conditional release when he had no programming or experience related to community interaction, he would be destined for failure. He had none of the necessary tools to deal with the stressors he would face outside the facility. Although there was some concern as to whose fault that was—Saiz' or LSH for lack of available programming—it was ultimately the public that was being sanctioned and placed in danger by the court's order.

We find that even if it were legally and factually appropriate, the order of complete discharge from the program a mere three years after Saiz himself agreed he was

12

not ready for transitional release was unreasonable. Because of its potency, a court must exercise its power to sanction a party for noncompliance with a court order with restraint and caution. See *Chambers v. NASCO*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Knutson Mortgage Corp. v. Coleman*, 24 Kan. App. 2d 650, 652, 951 P.2d 548 (1997). As the United States Supreme Court has cautioned, courts "must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States*, 356 U.S. 148, 153, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958). The contempt sanction imposed was grossly disproportionate to the offense alleged—failure to have programming available to allow a patient to timely comply with requirements to advance through the various stages of the SPTP. It was more a reflection of Judge Quint's dissatisfaction with the SPTP in general, than the specifics of this case.

For these reasons, we find that the district court abused its discretion in ordering Saiz' release. Although the SVPA does not prohibit imposing sanctions that are otherwise available under the Kansas Rules of Civil Procedure, the decision here ignores key aspects of the procedural requirements found in the SVPA. The district court serves a specific role in ordering a committed individual's placement into transitional release, conditional release, or final discharge. In making such a decision it must not only give due regard to the judgment of mental health professionals about the appropriate treatment methods, but it must also follow the procedure adopted by the Legislature. As a result, we reverse the order releasing Saiz from State custody.

The State also argues that Saiz failed to demonstrate probable cause to believe that his mental condition has significantly changed so that he is safe for transitional release under K.S.A. 2020 Supp. 59-29a08(d). Saiz makes no attempt to address this issue in his brief. And understandably so. The district court made no probable cause finding one way or the other as to Saiz' motion for transitional release. Its ruling was explicitly a sanction for failure to comply with its 2016 court order—a sanction that made a probable cause finding for transitional release irrelevant. Because the district court made no findings

13

about Saiz' request for transitional release based on either his 2018 or 2019 annual report, we must remand the case to consider the evidence presented under K.S.A. 2020 Supp. 59-29a08(d). If the court finds that probable cause exists, the district court is then required to hold a hearing on the issue of transitional release under K.S.A. 2020 Supp. 59-29a08(g).

Reversed and remanded with directions.