NOT DESIGNATED FOR PUBLICATION

Nos. 122,041
122,042
122,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.J.S., K.D.S., and K.X.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed May 8, 2020. Affirmed.

*Chris J. Pate*, of Pate & Paugh, LLC, of Wichita, for appellant natural mother.

*Cheryl M. Pierce*, assistant county attorney, for appellee.

*Stephany L. Hughes*, of Stephany L. Hughes, LLC, of El Dorado, guardian ad litem.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  K.B., the mother of three children, appeals the Butler County District Court's orders terminating her parental rights. During the lengthy history of this case, K.B. never conquered her dependence on alcohol and drugs or freed herself of the adverse effects that abuse inflicted on herself and her family. She periodically coped better but could not sustain any lasting improvement. Largely for that reason, we find sufficient evidence supporting the district court's decision and, therefore, affirm.

FACTUAL AND PROCEDURAL HISTORY

A friend went to visit K.B. at her home in the middle of a Thursday afternoon in early February 2016 and found the children alone. K.J.S., then 18-months old, was standing on the front porch. Her brothers K.D.S., who was just over four years old, and K.X.S., who was about six-and-a-half years old, were inside. In response to a call from the friend, an El Dorado police officer arrived to conduct a welfare check. The older children told the officer they did not know where their mother was. They said they had not been to school and had not eaten that day. It appeared as if the boys had been playing with matches and had lighted a candle—the house smelled of smoke and the candle was still warm when the officer arrived. The officer took all three children into protective custody.

Several days later, the State filed separate child in need of care cases for K.J.S., K.D.S., and K.X.S. The district court handled the three cases jointly, and they have been consolidated for appeal. The district court granted legal custody of the children to the Department for Children and Families and designated St. Francis Community Services as the social service agency to develop a family reintegration plan for K.B. and S.S., the children's father. The children were adjudicated in need of care. And we understand all three children have been in the physical custody of their paternal grandparents during these proceedings. The district court conducted the termination hearing on four nonconsecutive days between the end of January 2019 and the end of March. During the termination hearing, S.S. voluntarily relinquished his parental rights, and he is not a party to this appeal. After the hearing, the district court invited the State, K.B.'s lawyer, and the guardian ad litem to submit proposed findings and conclusions.

The district court entered substantively identical termination orders in each case on June 19, 2019, finding K.B. to be statutorily unfit, the unfitness would be unlikely to change in the foreseeable future, and the best interests of the children favored

termination. The district court identified multiple grounds for K.B.'s unfitness under both K.S.A. 2019 Supp. 38-2269(b) and K.S.A. 2019 Supp. 38-2269(c) because the children had been out of the home for an extended period. The district court also relied on the statutory presumption of unfitness in K.S.A. 2019 Supp. 38-2271(a)(6). K.B. has appealed.

The evidence at the adjudication hearing showed that K.B. had been diagnosed with and treated for anxiety disorder, posttraumatic stress disorder, and bipolar disorder well before these proceedings. In 2016, K.B. was struggling with those conditions but over the next three years improved considerably through counseling and medication leading up to the termination hearing.

As we have indicated, however, K.B. fared poorly in her battle with alcohol and drug abuse. K.B. was actively using methamphetamine in 2016, and the record indicates she and S.S. facilitated each other's continuing abuse of illegal drugs. K.B. made some progress on the reintegration plan objectives, including drug and alcohol counseling. But she tested positive for illegal drugs twice in early 2017 and visitation with the children was curtailed. During that time, K.B. was charged with misuse of a financial card. Later in 2017, she was charged with aggravated assault and pleaded to a reduced charge of felony criminal threat in an incident that appeared to be drug related. K.B. was placed on probation. In between, K.B. was charged with domestic battery and interference with a law enforcement officer, although those charges were dropped. The district court, however, took note of the incident in revising the family reintegration plan.

In early 2018, the district court found that reintegration was no longer a viable goal and directed the State to file motions for termination of K.B.'s parental rights. K.B. then made significant strides in meeting the plan objectives, according to her caseworkers. She appeared to be more dutiful in her drug and alcohol counseling and had no positive drug tests after July 2017. St. Francis accelerated visitation with the children

3

and recommended withdrawal of termination as the plan objective. The State withdrew the motions.

K.B. held steady in her attention to the reintegration plan over the summer. St. Francis drew up a schedule calling for reintegration of K.B. with the children in August 2018. Reintegration took place as scheduled but didn't work as anticipated. K.B. relapsed and began drinking heavily to the point she became dysfunctional. She asked the children's paternal grandparents to take them, and she reported her relapse to St. Francis. The reintegration lasted about three weeks. There is some indication in the record that the prospect of reintegration may have caused K.B.'s anxiety disorder to flare, and some financial pressures developed despite St. Francis' mitigation efforts.

So about two-and-a-half years into the case, the children were back with their grandparents, and K.B. was left to reconstruct the progress she had made. She was unable to do so. The district court again determined reintegration had ceased to be viable and directed the State to seek termination of K.B.'s parental rights. The evidence at the termination hearing showed that in late 2018 and early 2019, K.B. repeatedly failed to attend drug and alcohol abuse counseling sessions. During the hearing, K.B.'s caseworkers learned for the first time that she had begun seeing, then moved in with, and became engaged to a man who had been convicted of armed robbery and placed on probation in 2017—a conviction requiring he register as a violent offender under Kansas law. The man testified at the termination hearing explaining that he had participated in the robbery while he was under the influence of methamphetamine and that he has since been drug-free and gainfully employed. A caseworker testified that K.B. knew or should have known that she was expected to inform St. Francis of a serious romantic relationship as part of the agency's continuing work with the family and that the man's background was troubling.

On appeal, K.B. argues that the district court's findings of unfitness were not sufficiently supported in the evidence and that termination did not serve the children's best interests. She also faults the district court for adopting the guardian ad litem's proposed findings and conclusions, essentially without change, as its termination orders. Before taking up those points, we outline the core legal principles governing termination proceedings under the Revised Kansas Code for Care of Children, K.S.A. 2019 Supp. 38-2201 et seq.

*Governing Legal Principles*

A person has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness consistent with the best interests of the child. K.S.A. 2019 Supp. 38-2269(a), (g); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). As we explain, the termination of parental rights entails three findings: (1) parental unfitness; (2) unlikelihood of change; and (3) best interests of the child.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly

5

for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 2019 Supp. 38-2269(b) and, when the child has been removed from the home, the additional factors in K.S.A. 2019 Supp. 38-2269(c). The district court may also turn to any of the 13 statutory presumptions in K.S.A. 2019 Supp. 38-2271 to prove unfitness. In this case, the district court drew from each of those sources to find K.B. unfit. The district court may consider nonstatutory grounds demonstrating parental unfitness. See K.S.A. 2019 Supp. 38-2269(b) (district court "not limited to" listed factors in considering unfitness). That did not happen here. A single factor may be sufficient to establish unfitness. See K.S.A. 2019 Supp. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 2019 Supp. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2019 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses,

6

or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

A child's best interests are assessed somewhat differently from unfitness or unlikelihood of change. As directed by K.S.A. 2019 Supp. 38-2269(g)(1), the district court shall give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. The assessment balances the negative effects of termination on the child with the benefits of "permanency" in a different home environment. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*District Court's Findings of Unfitness*

With those principles in mind, we turn to K.B.'s challenge to the sufficiency of the evidence supporting the district court's conclusion that she was unfit within the meaning of K.S.A. 2019 Supp. 38-2269(a). As we have indicated, the district court cited multiple specific grounds of unfitness recognized in K.S.A. 2019 Supp. 38-2269(b) and (c) and one presumption of unfitness in K.S.A. 2019 Supp. 38-2271(a). The statutorily identified grounds of unfitness are not mutually exclusive and tend to overlap factually in the sense a parent's deficiencies may fall in more than one of those categories. And those grounds are merely illustrative of unfitness. A judicial decision to terminate parental rights is not principally an exercise in pigeonholing evidence of unfitness in specific statutory

7

categories but a considered conclusion that a particular person is irredeemably incapable of raising his or her children in a way that will leave them intact physically, intellectually, and emotionally as they grow into adulthood.

As one basis for termination, the district court found K.B. unfit under K.S.A. 2019 Supp. 38-2269(b)(3) identifying a parent's "use of intoxicating liquors or narcotic or dangerous drugs" to such an extent "as to render [him or her] unable to care for the ongoing physical, mental or emotional needs of the child." The evidence showed K.B. to have an intractable substance abuse problem over the three-year history of these proceedings. She and the children's father abused methamphetamine—a circumstance that almost certainly contributed heavily to the neglect triggering the State's intervention. As we have indicated, K.B. continued to struggle with active use of illegal drugs during the early stages of the reintegration plan. She did better for a time. But K.B. suffered a severe relapse, reverting to the debilitating consumption of alcohol shortly after the children were returned to her home in August 2018. Although K.B. ultimately recognized the danger she posed to the children in that condition and sought help, she couldn't convert that recognition into concrete steps to overcome her addiction. In the five months after her relapse and the removal of the children from her home, K.B. failed to follow through with a treatment regimen, missing numerous counseling sessions leading up to the termination hearing, and taking up a serious relationship with a man who recently had actively abused illegal drugs, contributing to his conviction for armed robbery.

K.B.'s continuing drug and alcohol abuse over the prolonged course of these proceedings left her unable to care for her children, as the unfortunate and short-lived reintegration in 2018 demonstrated. Following that episode, K.B. did not evince seriousness of purpose in overcoming her substance abuse, let alone some measured progress in doing so. It remained an intractable problem and, thus, an insurmountable barrier to successful family reintegration. In short, a reasonable fact-finder could conclude to a high probability that K.B. was presently unfit at the time of the termination

8

hearing. The district court properly relied on K.S.A. 2019 Supp. 38-2269(b)(3) in concluding K.B. to be unfit.

On appeal, K.B. has not expressly disputed the district court's conclusion that her unfitness on any of the cited grounds was unlikely to change in the foreseeable future. We could leave our review at that. See *Nguyen v. State*, 309 Kan. 96, 108-09, 431 P.3d 862 (2018). But the evidence, particularly on K.B.'s substance abuse, supports unlikelihood of change. As we have said, these cases stretched over three years, and K.B.'s abuse of drugs and alcohol presented an active, ongoing obstacle to reintegration. Given the circumstances from August 2018 forward, there was no real prospect for material change in some measured period, particularly taking account of child time, the ages of the children, and how long they had been in DCF custody. In light of the points on appeal, we do not again comment on the unlikelihood of change component of the unfitness determination.

The district court also found K.B. unfit under K.S.A. 2019 Supp. 38-2269(b)(8) that recognizes unfitness based "on lack of effort on the part of the parent to adjust [his or her] circumstances, conduct or conditions to meet the needs of the child." The same evidence supports this ground, particularly K.B.'s actions (and lack of action) following her relapse. She dismissed the structured treatment plan, missing counseling session after counseling session. That inaction corresponded to her romantic attachment to a man who had had significant drug abuse issues, although K.B. denied any causative link between her poor participation in treatment and her new romance.

The caseworkers expressed concern about the relationship, not in the least because they first learned about it during the termination hearing. The district court was concerned, as well. K.B.'s failure to inform her caseworkers reflected a disregard of the overall reintegration plan. More substantively, her fiancé's fairly recent involvement with illegal drugs raises obvious concerns, as she herself struggled with sobriety. K.B. testified

9

at the termination hearing she wasn't fully aware of her fiancé's criminal background. If so, that failure to inquire seems to reflect a certain lack of judgment, since K.B. fully intended him to be involved with her children. Either way, K.B. likely kept quiet about her fiancé because she anticipated her caseworkers would question or disapprove of the relationship. That reflected another layer of a lack of effort on K.B.'s part to fully embrace reintegration and the needs of her children.

The district court separately found K.B. to be unfit under K.S.A. 2019 Supp. 38-2269(b)(4) based on her "neglect" of the children during the reintegration process, citing the length of the process—at almost three years—and her undisclosed romantic relationship late in the process. We think those circumstances probably contribute more to unfitness based on a parent's failure to adjust during the reintegration process to meet the needs of the children. But consigning K.B.'s conduct exclusively to one statutory subsection or another is the very pigeonholing we said courts ought to avoid. So we do not independently address sufficiency under K.S.A. 2019 Supp. 38-2269(b)(4).

The district court also found K.B. unfit under K.S.A. 2019 Supp. 38-2269(b)(7) based on the failure of the social service agency's "reasonable efforts . . . to rehabilitate the family." Again, the evidence on this ground overlaps with K.B.'s inability to overcome her substance abuse problems. St. Francis arranged for treatment options that K.B. pursued, and, at times, she actively sought out additional help. The agency arranged for other assistance. In many respects, K.B. took good advantage of those services and programs to make progress on many aspects of the reintegration plan. Those were reasonable efforts. But as we have described, they failed in a critical way in getting at K.B.'s addiction.

On appeal, K.B. denigrates St. Francis' efforts and asserts she was set up to fail in August 2018 because the agency prematurely returned her children to her. But that seems like a convenient hindsight assessment given the record evidence. By then, the children

10

had been in DCF custody for almost two and a half years. Both K.B. and her caseworkers believed she was ready to resume parenting her children, although she voiced some trepidation at the prospect. There were some unanticipated financial issues with rent and other expenses that St. Francis helped address. The evidence portrays reasonable efforts that just didn't work—not a calculated or negligently conceived plan doomed to undermine K.B.'s success. In short, the evidence supports the district court's determination of unfitness based on the failure of reasonable efforts aimed at family reintegration.

The failure of a reasonable reintegration plan is also a cornerstone for parental unfitness under K.S.A. 2019 Supp. 38-2269(c)(3) when the children have been in an extended out-of-home placement. Here, K.J.S., K.D.S., and K.X.S. had been out of the home for the requisite time. Similarly, the presumption of unfitness in K.S.A. 2019 Supp. 38-2271(a)(6) depends upon an out-of-home placement of at least two years and the parent's failure to carry out a reasonable reintegration plan, thus looking at the same circumstances that support unfitness under K.S.A. 2019 Supp. 38-2269(b)(7) and (b)(8).

Because we have already determined the district court properly found K.B. to be unfit under K.S.A. 2019 Supp. 38-2269(b)(3), (b)(7), and (b)(8), we need not prolong our discussion by assessing the sufficiency of evidence supporting the district court's findings under K.S.A. 2019 Supp. 38-2269(c)(3) and K.S.A. 2019 Supp. 38-2271(a)(6). We likewise offer no specific assessment of the district court's reliance on K.S.A. 2019 Supp. 38-2269(c)(1) and (c)(2) as alternative and additional bases for finding K.B. unfit. All of those grounds would merely provide alternative legal bases for the district court's conclusion.

We mention two other grounds the district court relied on to find K.B. unfit:

• K.S.A. 2019 Supp. 38-2269(b)(1) (parent's mental illness "of such duration or nature" he or she cannot "care for the ongoing physical, mental[,] and emotional needs of the child"). The district court found K.B. to be unfit under this subsection. Although K.B. had been diagnosed with several identifiable mental illnesses or psychological conditions, she effectively treated them through counseling and medication. The record evidence does not support the conclusion that K.B.'s mental health was a distinct factor contributing to her inability to parent her children. Simply having a diagnosable (and diagnosed) mental illness is not enough. We suppose clinicians would not necessarily cleave substance abuse from some mental illnesses in considering a client's treatment and wellbeing. But the evidence here falls well short of demonstrable unfitness attributable to K.B.'s diagnosed mental illness.

• K.S.A. 2019 Supp. 38-2269(b)(5) (felony conviction and imprisonment). The district court found K.B. unfit on this ground because she had been convicted of felony criminal threat and placed on probation. The district court then assumed K.B. may have jeopardized her probation by associating with her fiancé, who is a convicted felon. This ground of unfitness is not backward looking so a parent with a felony conviction who had completed a term of imprisonment well before the start of the child in need of care proceedings typically would not be considered presently unfit for that reason. Rather, a parent presently incarcerated on a felony conviction with an extended sentence may be unfit for that reason—a long forced separation substantially inhibits the development or continuation of a healthy parent-child relationship. See *In re M.H.*, 50 Kan. App. 2d at 1171-72; *In re K.O.*, No. 116,704, 2017 WL 2403304, at *4 (Kan. App. 2017) (unpublished opinion). K.B. and her children did not face that situation. The district court's supposition about a potential probation violation and revocation is too speculative to support a finding under this subsection.

12

*Best Interests of the Children*

Much of what we have recounted already supports the district court's conclusion as to the children's best interests. The district court understood the facts, although we have assessed their legal import differently in ascertaining the reasons K.B. was statutorily unfit. And the district court identified the standards governing the best interests determination, as set forth in K.S.A. 2019 Supp. 38-2269(g)(1). In reviewing the district court's decision that the children's best interests favored termination of K.B.'s parental rights, we would have to find an abuse of discretion because no reasonable judicial officer could have come to that conclusion in these circumstances. Plainly, that isn't so.

The evidence did not suggest a well-established bond between K.B. and her children—not surprising given their ages and the comparatively long time they had been out of the home. The children apparently were faring at least acceptably in the physical custody of their paternal grandparents. The record certainly fails to show severance of the parent-child relationship would inflict an especially grave emotional wound on K.J.S., K.D.S., or K.X.S. Continuing efforts at reintegration would be fraught with uncertainty for the children. When the children had been in K.B.'s custody before these proceedings began and during the brief reintegration in late summer 2018, they were neglected. Those circumstances undergird the district court's best interests finding with little in the way of tangible countervailing considerations. We see no abuse of judicial discretion.

*Propriety of the District Court's Findings and Conclusions*

For her final point, K.B. assails the district court's findings and conclusions because they adopt, essentially verbatim, the guardian ad litem's submissions. K.B. contends the district court acted mechanically and entered the termination orders by rote rather than independent judicial decision-making. As such, she says, they must be set aside.

13

Kansas appellate courts have regularly discouraged district courts from adopting wholesale a party's proposed findings and conclusions, since the practice fosters an appearance of judicial lassitude, if not lack of independence. See *Stone v. City of Kiowa*, 263 Kan. 502, 506, 950 P.2d 1305 (1997); *In re Estate of Lane*, 39 Kan. App. 2d 1062, 1064, 188 P.3d 23 (2008). But the district court's decision to do so does not, standing alone, negate the judgment as inherently suspect or an abuse of discretion. *Stone*, 263 Kan. at 506. We both repeat the admonition and decline to find a categorical basis for reversal when a district court disregards that advice. K.B.'s point does not warrant relief. The record supports some, though not all, of the district court's findings and conclusions; the orders of termination, therefore, have been properly (and sufficiently) anchored in the evidence and the law.

In her appellate brief, the guardian ad litem suggests her proposed findings and conclusions should not prompt the same reservations as those from the lawyers for the State or the parent, since she functions as an independent agent rather than an advocate for a party. We need not delve deeply into the argument or its premise in this case, so we do not. But the guardian ad litem's suggestion isn't nearly as clear cut as she would have it. In these cases, a guardian ad litem is statutorily charged with "represent[ing] the best interests of the child." K.S.A. 2019 Supp. 38-2205(a). That's different from and may conflict with advocating the stated desires of a child in these cases. See K.S.A. 2019 Supp. 38-2205(a) (recognizing potential conflict and authorizing appointment of lawyer specifically to represent child). While guardians ad litem do not, then, represent flesh and blood clients, they have a duty to advance a particular position based on their assessment of the facts in a given case and their perception of the legally permissible outcomes promoting that position.

More to the point here, a district court's verbatim adoption of proposed findings and conclusions from a guardian ad litem, nonetheless, retains the unseemly look of

14

outsourcing the elemental judicial duties of weighing conflicting evidence to discern the "true" facts and applying the governing legal principles to those facts to arrive at a judgment. In these cases, fundamental rights figuratively live or die with that judgment. And, as this case illustrates, guardians ad litem have no greater command of the law than any of the rest of us.

*Conclusion*

Having fully examined the points K.B. has raised, we find no basis to reverse the district court's ultimate decision to terminate her parental rights with respect to K.J.S., K.D.S., and K.X.S. The evidence, measured against the heightened standard of proof for termination, shows K.B. to be unfit, especially as a result of her continuing substance abuse, and to be without any realistic prospect for alleviating that unfitness in the foreseeable future, especially given the duration of these proceedings. We, likewise, find no abuse of discretion in the district court's conclusion that the children's best interests will be served by terminating K.B.'s parental rights.

Affirmed.